[No. 1411.]

THE STATE OF NEVADA, EX REL. W. H. CAUGHLIN, AS SHERIFF OF WASHOE COUNTY, NEVADA, RELATOR, *v.* GEORGE ALT, W. P. McLAUGHLIN AND J. F. CROSBY, AS THE BOARD OF COUNTY COMMISSIONERS OF WASHOE COUNTY, NEVADA, RESPONDENTS.

1—NEGATIVE STATUTES—REPEAL BY.—Negative statutes are mandatory, and must be presumed to have been intended to repeal all conflicting statutes, unless the contrary can be clearly seen.

2—SHERIFFS—BOARD OF PRISONERS—RIGHT TO CONTRACT FOR.—Stats. 1887, 108, which forbid any county officer, except county commissioners, to contract for the payment or expenditure of any county moneys whatever, being expressed in negative terms, repeal Gen. Stats., sec. 2139, which required the sheriffs to furnish, at the expense of the counties, all necessary supplies for the prisoners committed to their custody, and left the sheriffs without authority to bind their counties by a contract for the board of prisoners.

ORIGINAL PROCEEDING. Application for writ of *certiorari.*

The affidavit for the writ alleged that the respondents, as commissioners of Washoe county, were proceeding to let a contract for boarding the prisoners confined in the county jail, and to that end had made certain orders in relation thereto. This proceeding was brought to test their authority to make said orders. The respondents demurred to the affidavit.

*Torreyson & Summerfield,* for Relator:

Relator claims the right to furnish all necessary sustenance, bedding, clothing and fuel for the prisoners committed to his custody, and that the county commissioners are required to allow him out of the county treasury all necessary costs, charges and expenses thereof. He makes this claim under and by virtue of an act of the legislature of the State of Nevada, entitled "An act in relation to common jails and the prisoners thereof," approved November 25, 1861, and the act amendatory thereof, approved March 3, 1866.

.Respondents claim that relator has no right to furnish these supplies, except upon an order of the board of county commissioners, or a majority of them, authorizing him to do so under and by virtue of an act of the legislature of Nevada, entitled "An act limiting the power of certain county officers," approved March 3, 1887, affirming that said act of 1887 repeals section 2139, Gen. Stats., heretofore empowering the sheriff to furnish such supplies.

The act of 1887 is a general act, contains no repealing clause, and the act of 1866 is a particular, specific and special act; if the two acts can stand and be taken together, and each given their proper construction, the court will uphold them both. The act of 1866 is nowhere mentioned in the act of 1887, and if section 2139 is repealed it can only be so by implication. Repeals by implication are not favored by the courts, but it is the duty of the court to ascertain the intention of the legislature at the time when the act of 1887 was passed. At that time the act of 1866 was a law in force upon our statute books, and the presumption is that the members of the legislature of 1887 knew of its existence, and if it was their intention to take away from the sheriff the powers and duties imposed upon him under the act of 1866, they would certainly have expressed their intention in clear and unmistakable language. That it was not their intention so to do is found in the words of the act itself. They undoubtedly intended to except the sheriff from the provisions of this act.

If the sheriff fails to furnish the specific things mentioned in the act of 1866, or shall not allow reasonable allowance and accommodation to the prisoners in his charge, the commissioners can bring an action against him, and recover the sum of $50. Is it pretended that this section of the act of 1861, as amended in 1866, has been repealed by the act of 1887? (See sec. 2141.) How about section 2140? Must the sheriff go to the county commissioners and have them say what they will allow for the transfer of prisoners, and make a contract before he removes them? How about section 2147?

The act of 1887 makes it the specific duty of sheriffs to furnish specific things themselves, of which the necessary cost must be specifically allowed them by the commissioners.

To produce a repeal by implication the two acts must be

upon the same subject and there must be a plain repugnancy between their provisions. (*Coats* v. *Hill*, 41 Ark. 151, and authorities; Sutherland on Stat. Const., sec. 151, 204–205; 12 Bush. 237; also, 54 Mich. 171; 64 Md. 419–423.)

The act of 1887 does not refer to the former act of 1866 or to any part of it, either directly or indirectly. The invariable rule of construction in respect to the repealing of statutes by implication is that the earlier act remains in force unless the two are manifestly inconsistent with and repugnant to each other, or unless in the later act some express notice is taken of the former plainly indicating an intention to abrogate it. (*Bowen* v. *Lease*, 5 Hill. 225–226.)

It is necessary to the implication of a repeal that the objects of the two statutes be the same; if they are not, both will stand, though they may refer to the same subject. (*People* v. *Platt*, 67 Cal. 32; *U. S.* v. *Claffin*, 97 U. S. 546; *Ramson* v. *Ramson*, 52 Ill. 62.) Repugnant means irreconcilable.

The law intended that the sheriff, and he alone, should have charge and control of the prisoners committed to his charge as to discipline, custody and maintenance. He is *the* officer upon whom this duty devolves, and no one else. The act of 1861–66 was passed in order to give the sheriff sole power and control over the prisoners in his charge. He. is responsible on his official bond.

If respondent's interpretation of the law is correct, the sheriff cannot give the prisoners any *light,* any *bedding,* any *clothing,* or any *fuel* without having the commissioners contract for such supplies.

The act of 1887 never intended to repeal the law regarding the duties of the sheriff, so far as the prisoners committed to his charge were concerned, because in the act of 1866 the legislature was only legislating so far as prisoners were concerned, and the act of 1887 is reconcilable with this.

If this be not true, then it is necessary for the sheriff, in case he needs a mattress for a prisoner, to go to the commissioners and ask them to get it, and for this there must be a meeting of the board of county commissioners before he can do so.

There are numerous cases in which the law has made it the specific duty of certain county officers to do certain things at the expense of the county, and there is no law

making it the duty of the commissioners to do these things. Did the legislature by the act of 1887 intend by implication to withdraw those duties from the county officers and make no provision for any one to perform them?

Sheriffs—Duty to board jurors in criminal cases at the expense of the county (Gen. Stats. 4271 and 4272). Assessor—Duty to print list of taxpayers at the expense of the county (Gen. Stats. 1280). Clerks—Duty to call doctors at the expense of the county to examine alleged insane persons when judge is absent from the county (Stats. 1889, p. 40, in connection with Gen. Stats. 1457). Treasurer—Duty to publish delinquent tax list at expense of county (Stats. 1891, pp. 147–48). Query: Did the Legislature by the act of 1887 intend to leave the performance or non-performance of these duties entirely dependent upon the pleasure of the commissioners?

The act of 1887 is in every sense a general one. The act of November, 1861, as since amended, is in every sense of the word a particular one, the legislature having in mind the one subject only of jails and the prisoners therein.

A later general act never repeals an earlier particular act, except in the clearest manifestation of the intention of the legislature so to do, or when the acts are so irreconcilably repugnant that it is impossible for both to stand.

In this respect a particular act is classified the same as a local, special, or local and special act. (Sedgwick on Stat. Construction, secs. 95–6–8–23; Sutherland on Stat. Construction, sec. 157, p. 212; sec. 158, p. 159; Dwarris, sec. 765; *State* v. *Judge*, 38 Mo. 534; 18 Md. 434, 439; *Village Hyde Park* v. *Cemetery*, 119 Ill. 141, 147; *Home for Inebriates* v. *Reis*, 95 Cal. 142, 148; *Ex Parte Smith*, 40 Cal. 420; 33 Am. & Eng. Ency. of Law, p. 424; *State* v. *Severance*, 55 Mo. 386; *Thorpe* v. *Schooling*, 7 Nev. 17; 10 Nev. 319; 20 Nev. 217; 21 Nev. 220.)

*It is really a question of intention.*

The words *negative* and *affirmative* statutes mean nothing. The question is whether they are repugnant or not to that which before existed. That may be more easily shown when the statute is negative than when it is affirmative, but the question is the same. A negative word is only one *indicia*

noted by the courts in order to determine legislative intention. (13 O. B. 33.)

A subsequent act which can be reconciled with a former one shall not be a repeal of it, though there be negative words. (16 W. Va. 278.)

The well-settled doctrine derived from all authorities is that "laws special and local in their application are not deemed repealed by general legislation, except upon the clearest manifestation of an intent by the legislature to effect such repeal; and ordinarily an express repeal or some intelligible reference to the special act is necessary to accomplish that end." (81 Va. 367.)

We submit that, had the legislature intended to repeal the act of 1866, it certainly would have made some reference to it in the act of 1887.

It is clear that the legislature, in passing the act of 1887, did not intend to limit or curtail the duties of the sheriff, and if both acts can be reconciled, one with the other, then the court will so find.

*B. F. Curler*, District Attorney of Washoe county, and *Benjamin Curler*, for Respondents:

Respondents claim that the petition does not state facts sufficient to entitle the relator to the granting of the writ, for the reason that the board of county commissioners has the right to contract for boarding the prisoners, and no other person or officer has.

It is conceded that prior to the passage of the act of the legislature of March 3, 1887, Stats. 1887, p. 108, the sheriffs of the several counties of this state were authorized to furnish all necessary sustenance, bedding, clothing and fuel for those confined in the county jail, and the county commissioners were required to allow all necessary costs, charges and expenses thereof out of the county treasury. (Gen. Stats., sec. 2139.) But the act of March 3, 1887, withdraws that right and power from the sheriff and vests it in the board of county commissioners; and that part of the act of 1861, as amended in 1866, which authorized the sheriff to furnish all necessary sustenance, bedding, clothing and fuel for prisoners, is repealed by statute of March 3, 1887. The act of March 3, 1887, is entitled "An act limiting the power of cer-

tain county officers," and the body of the act provides that
" No county officer in any county of this state, except the
board of county commissioners, shall contract for the pay-
ment or expenditure of any county moneys for any purpose
whatever, or shall purchase any stores or materials, goods,
wares or merchandise, or contract for any labor or service
whatever, except the board of county commissioners, or a
majority of them, shall order such officer to do the same."

The title of an act can properly be resorted to in order to
determine the legislative intent. (*Torreyson* v. *Board of Ex.*,
7 Nev. 19; *People* v. *Flynn*, 16 Cal. 358.)   And the title is of
much importance when the constitution requires that the
subject matter of the act shall be briefly stated in the title.
(*Mazro* v. *Merchant & Co.*, 14 Wis. 295; *Dodd* v. *State*, 18
Ind. 56; Const. of Nev., art. IV., sec. 17.)

Looking then to the title of this act, it is manifest that the
legislature passed it solely for the purpose of limiting the
power of certain county officers, and the power sought to be
limited is one that must have been vested in a county officer
by express provision of law, otherwise, considering the nature
sought to be limited, it would not exist.   Now the power did
exist in the sheriff, prior to the passage of this act, and that
by express provision to furnish necessary sustenance, etc.,
for the prisoners and bound the county for the same; then
considering the title of the act of March 3, 1887, in connec-
tion with its provisions, it is clear that the intention of the
legislature was to withdraw this power from the sheriff
because the furnishing of sustenance, etc., involves either
the contracting for the payment or expenditure of county
moneys, or the purchasing of stores or materials, goods,
wares, or merchandise.

The statute is unambiguous and gives no room for con-
struction (*Odd Fellows' Bank* v. *Quillan*, 11 Nev. 109), and
being a negative statute is in terms a denial of all prior laws
inconsistent therewith and therefore repeals them, and obvi-
ously this repeal is not by implication, but is express. (*State*
v. *Donnelley*, 20 Nev. 217–218; Bishop on Stat. Crimes, sec. 153;
Sedgwick on Construction, p. 31; *State* v. *Beard*, 21 Nev. 220.)

Negative words are indicative of a mandatory intent.
(Bishop on Stat. Crimes, sec. 155a; Sedgwick on Construc-
tion, p. 319; 1 Blackstone's Commentaries, 89.)

The intention of the legislature controls, both as to meaning of the act and repeal of former acts, no matter how expressed. "If, therefore, it is clearly apparent that it intended to abrogate a former law, no matter whether that intention is expressly stated or not, it must be carried out." (*Thorpe* v. *Schooling,* 7 Nev. 17–18.) And if the intention to repeal is manifest it is not necessary that there be a direct conflict between the two acts. (*Thorpe* v. *Schooling,* 7 Nev. 17–18; *City and County of Sacramento* v. *Vird,* 15 Cal. 294; Sedgwick on Construction, p. 104.)

By the Court, BIGELOW, J.:

The question involved is the right of the board of commissioners of Washoe county to contract for the board of the prisoners confined in the jail of said county. It is claimed that the authority to purchase all necessary supplies for the prisoners is vested in the sheriff, and that the commissioners have nothing to do with it, except to allow the bill as contracted by that officer. By Stats. 1861, p. 41, as amended by Stats. 1866, p. 189 (Gen. Stats., sec. 2139), it was provided that the sheriff "shall furnish all necessary sustenance, bedding, clothing and fuel for the prisoners committed to his custody; and the commissioners are hereby required to allow him, out of the county treasury, all necessary costs, charges and expenses thereof." It is admitted that this act vested the disputed power in the sheriff, but it is contended that the law in this respect was changed by Stats. 1887, p. 108, which reads as follows: "No county officer in any county in this state, except the board of county commissioners, shall contract for the payment or expenditure of any county moneys for any purpose whatever, or shall purchase any stores or materials, goods, wares or merchandise, or contract for any labor or service whatever, except the board of county commissioners, or a majority of them, shall order such officer to do the same."

Does the latter act vest in the commissioners the authority previously existing in the sheriff?

Except as limited by the constitution, the legislature undoubtedly has full control over county affairs, and it is not suggested that it did not have the power to make the change indicated; but it is contended that it did not do so, upon the

principle that a general statute does not repeal a special one, unless the intention so to do is clearly manifested; that, as the act of 1861 is nowhere mentioned in the act of 1887, the latter, at most, can only constitute a repeal of the former by implication, and, as the two acts can stand together—the one as constituting an exception to the general rule of the other that no county officer shall be permitted to contract for the county—no such repeal exists. This principle is illustrated by the case of *State* v. *Beard*, 21 Nev. 218.

The question is one of intention upon the part of the legislature, but of intention to be ascertained under the established rules for the interpretation of statutes. The courts are not permitted to speculate as to whether the legislature had a certain state of facts in view at the time of the enactment of a statute, or as to whether, if it had, the statute would not have been drawn differently; but, where the language is clear, we must suppose that the lawmakers intended just what they have said, in every aspect of the case that they ought to have had in mind. Where, as in the case of *State* v. *Beard, supra*, two affirmative statutes have been enacted—one special and the other general—and there is ample scope for the latter to operate without repealing the former, it may be presumed that the legislature did not intend to repeal the special act, although in the letter of the two acts there is a conflict. Especially is this the case in view of the rule of interpretation—which we must presume was known to the legislature—that one affirmative statute will not repeal another, unless there is an absolute conflict between them, or it can be ascertained in some manner that a repeal was intended. But where the later act is expressed in negative terms, the principle is different. Negative statutes are mandatory, and must be presumed to have been intended as a repeal of all conflicting provisions, unless the contrary can be clearly seen. "It would not, perhaps, be easy," said Sherwood, J., in *Bladen* v. *Philadelphia*, 60 Pa. St. 464, 466, "·to lay down any general rule as to when the provisions of a statute are merely directory, or when mandatory or imperative. Where the words are affirmative, and relate to the manner in which power or jurisdiction vested in a public officer or body is to be exercised, and not to the limits of the power or jurisdiction itself, they may be, and often

have been, construed to be directory; but negative words which go the power or jurisdiction have never, that I am aware of, been brought within the category." A negative statute, being mandatory, and in terms a negation, or denial, of the prior law, repeals it. (Bish. Writ. Law, sec. 153.) If a statute contrary to a former one be expressed in negative words, it operates to repeal the former. (Suth. St. Const., sec. 139.) Thus, an act providing that "no corporation" shall interpose the defense of usury repeals the laws against usury as to corporations. (*Curtis* v. *Leavitt,* 15 N. Y. 135.) An act that "no beer" shall be sold without a license repeals a law previously authorizing such sale, under certain circumstances, without a license. (*Read* v. *Storey,* 6 Hurl. & N. 423.) It is certainly the general rule that the negative words in a subsequent statute constitute a repeal of all previously enacted conflicting provisions, and we are unable to discover anything indicating a different intention in this case.

Under our statutes the commissioners are the only officers authorized generally to purchase supplies, or enter into contracts, on behalf of the county. (Gen. Stats., sec. 1949.) At the time of the enactment of the statute of 1887, but two or three instances existed where other officers had the power of so doing. Certainly, without a statute to that effect, no officer could bind the county, and, as we must suppose, that the last-mentioned act was intended to make some change in the law, and was not passed for a mere idle purpose, upon what else could it be intended to operate, if not in the instance mentioned? If intended for these few instances, why should it not as well have been intended to apply to the sheriff, in the matter of keeping of prisoners, as to the assessor in the publication of the list of taxpayers, or to the treasurer in the publication of the delinquent tax list?

It is suggested that other officers have been in the habit of purchasing supplies for the counties, and that it was to prevent their already illegal acts that the statute was passed. This is possible; but to construe the statute upon that theory would be to take our feet from the well-trodden path of recognized legal construction, to be relied upon by legislatures and courts in both enacting and construing laws, and resort to the miry bog of speculation, without chart or compass to guide our steps.

It is also argued that the difficulty of properly caring for the prisoners, if the sheriff must consult the commissioners every time he orders a meal or purchases a pair of shoes for them, proves that the legislature did not intend such a result. But to this it must be answered that, where the law is plain, this is a consideration with which the courts have nothing to do. Their duty is to ascertain and give effect to what the legislature, within the limits of the constitution, has declared. If the law works badly, it will probably be changed, but this is for the legislature to determine.

It may also be added that the act of 1887 permits the commissioners to authorize other officers to purchase all necessary supplies, etc., for the county; and we can no more suppose that they will neglect to either properly attended to county affairs themselves, or to authorize others to do so, than that the legislature would fail to enact laws necessary for that purpose in the first instance, or the sheriff fail to furnish necessary food and clothing for the prisoners in his charge while the duty of so doing rested upon him.

At any rate, it seems clear that, by the last-mentioned law, the legislature intended to place all expenditure of county funds under control of the board of commissioners; and this, under the circumstances, is conclusive of the controversy.

The application for the writ is denied.