CARROLL T. RANDONO, Appellant, *v.* CUNA MUTUAL INSURANCE GROUP, CUNA MUTUAL INSURANCE SOCIETY, CU MEMBERS LIFE INSURANCE TRUST, Respondents.

No. 20013

June 12, 1990 793 P.2d 1324

*Stanley W. Pierce,* Las Vegas, for Appellant.

*Edwards, Hunt, Hale & Hansen* and *Travis C. Williamson,* Las Vegas, for Respondents.

# OPINION

By the Court, STEFFEN, J.:

## Facts

Appellant Carroll T. Randono (Mrs. Randono) is the widow of Gene D. Randono (Mr. Randono), who was insured on a life insurance policy issued by respondent CUNA Mutual Insurance Group (CUNA). Mr. Randono died of gastric carcinoma (stomach cancer) in March, 1986. He had applied for and received the $50,000.00 term life insurance policy from CUNA in June 1985. In the application for the policy, Mr. Randono gave a negative response to a question which asked if the applicant had ever been treated for or told by competent authority that the applicant had (among other things) high blood pressure. Mr. Randono's answer was not entirely correct.

The evidence in the record clearly demonstrates that Mr. Randono had previously had a not-inconsequential blood pressure problem for which he had received treatment. The record also showed that he had both knowledge of this condition and memory of his past treatment for high blood pressure at the time he incorrectly filled out his application for insurance.

The record further indicates that had Mr. Randono disclosed his hypertensive history, his premiums would have been higher than what he ultimately paid. CUNA asserts that the omission precluded it from considering the blood pressure problem and including it in the underwriting equation. CUNA further claimed the misstatement deprived it of critical information that would

have led to an automatic investigation and discovery of additional negative information about Mr. Randono's health. CUNA's managing underwriter stated in his affidavit that if the company had been apprised of all the relevant facts about Mr. Randono's health, it would have probably issued the policy but only at a different, markedly higher premium rate.[1]

After Mr. Randono's death, Mrs. Randono, as beneficiary of the policy, attempted to collect the policy proceeds. She sent a copy of the death certificate and the policy to CUNA, requesting a lump sum payment of the death benefit. CUNA, after some investigation, denied the claim. The company returned all the premiums with interest and informed Mrs. Randono it was exercising its asserted right to cancel the contract. The basis for the denial of payment was that Mr. Randono had not disclosed his serious high blood pressure on the application for insurance and therefore CUNA believed it was entitled to deny recovery under NRS 687B.110. This suit for the insurance policy proceeds ensued and the trial court granted summary judgment based upon the aforementioned facts and its interpretation of NRS 687B.110.

## Discussion

The standard for summary judgment is well established. All evidence must be construed most favorably to the non-moving party. First Interstate Bank v. Green, 101 Nev. 113, 114-115, 694 P.2d 496, 497 (1985). Summary judgment is only appropriate when judgment can be granted as a matter of law and no material issues of fact remain for trial. In re Hilton Hotel, 101 Nev. 489, 492, 706 P.2d 137, 138 (1985). Essentially, discretion plays no real role and the grant of summary judgment must be justified on the record before the court.

Despite appellant's perception that the issues presented by this case are voluminous, its true essence can be reduced to the question of whether NRS 687B.110 precludes recovery by Mrs. Randono given the circumstances. Applying NRS 687B.110 to the established material facts, we conclude that it does. Therefore, we perceive no error in the district court's decision.

NRS 687B.110 states:

---

[1]Appellant challenges this as a factual issue necessitating a trial but produced no evidence that could be said to contradict CUNA's affidavit. Appellant is entitled to all presumptions in her favor, but this does not require the court to assume that CUNA perjured itself when explaining its own business practices to the court, especially in the absence of rebutting evidence.

All statements and descriptions in any application for an insurance policy or annuity contract, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:

1. Fraudulent; or

2. Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

3. The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

Under long established principles of statutory construction, when a statute is susceptible to but one natural or honest construction, that alone is the construction that can be given. State v. Cal. M. Co., 13 Nev. 203, 217 (1878). We have also consistently held that where there is no ambiguity in a statute, there is no opportunity for judicial construction and the law must be followed regardless of result. McKay v. Bd. of Supervisors, 102 Nev. 644, 648, 730 P.2d 438, 441 (1986); State v. Woodbury, 17 Nev. 337, 343, 30 P. 1006, 1008 (1883). This means that if a statute clearly and unambiguously specifies the legislature's intended result, such result will prevail even if the statute is impractical or inequitable. State v. Commissioners Washoe Co., 22 Nev. 203, 212, 37 P. 486, 488 (1894); In Re Walters' Estate, 60 Nev. 172, 186, 104 P.2d 968, 974 (1940).

We are constrained by the above rules of statutory interpretation. The view with the most interpretational integrity and which takes the statutory language at face value is the view that concludes the statute means what it says despite its potential for incommensurate hardship.[2]

CUNA's position is simply that the blood pressure question should have been answered in the affirmative and that because it

---

[2]We note that the statute reflects what is apparently a widely held view. The majority rule seems to be that the misrepresentation and the cause of loss do not have to be related to make the insurance contract voidable by the insurance company. 7 Couch, *Insurance* (2d rev. ed.), § 35:87 at 145 (1985); 43 Am.Jur.2d *Insurance* § 1058 at 1062-1064 (1982). Of course, because there is a controlling Nevada statute, the approach of other jurisdictions does not affect our determination here.

was not, CUNA is now statutorily permitted to rescind the contract. We are forced to agree.

NRS 687B.110 begins by stating the general proposition that statements in insurance applications are representations, not warranties, and that inaccuracies (broadly defined) in such information will not preclude recovery. It then specifies, in subparts 1-3, particular exceptions, the occurrence of which will preclude recovery. There is no claim that the inaccuracy in the application was fraudulent; NRS 687B.110(1) is therefore inapplicable. However, both NRS 687B.110(2) and NRS 687B.110(3) do apply and defeat recovery.

First, a history or previous occurrence of hypertension is "material to the acceptance of risk" in writing a life insurance policy and is material "to the hazard assumed by the insurer" in a life insurance contract. Therefore, the failure to disclose is clearly addressed and precluded by NRS 687B.110(2). Second, Mr. Randono's omission resulted in the insurer establishing a lower premium than Mr. Randono's actual medical history would have dictated. This situation is addressed in NRS 687B.110(3) and also prevents enforcement of the contract by Mrs. Randono. Thus, either provision is sufficient to preclude recovery.

Mrs. Randono agrees that if her husband's death had been related to high blood pressure, then there could be no recovery. However, she argues that an omission or misrepresentation must be related to the cause of death in order to be material under the statute. Unfortunately, despite the appeal of her logic, we are reluctantly unpersuaded.

First, appellant's contention relies heavily on policy arguments. Arguably, because Mr. Randono did not succumb from causes related to hypertension, payment of the death benefit would have essentially corresponded to the risk bargained for by CUNA. It actuarially provided for the contingency that Mr. Randono might die of cancer. The net effect of the statute is that Mr. Randono's widow does not receive the benefit of her husband's coverage because the material misrepresentation in his application renders the policy voidable by CUNA. Unfortunately, policy arguments are unavailing in the face of an unambiguous, controlling statute, as we have here. We must assume that the legislature, when it enacted the statute, was aware of the various policy considerations and purposely drafted the statute to read as it does.

Second, even if we were to interpret NRS 687B.110(2) in the manner urged by appellant (agreeing that "material" means that the death and the omission have to be related), this only addresses one of the grounds in the statute upon which summary judgment

was justified. A fixed barrier to recovery remains under NRS 687B.110(3) regarding the increased rate that clearly would have pertained if CUNA had been accurately informed of Mr. Randono's medical history.

The introductory language of NRS 687B.110 offers hope to consumers that insurance contracts will not be made voidable by inaccuracies and omissions in their applications, but the exceptions, especially the one contained in NRS 687B.110(3), largely consume the rule. The exceptions would appear to deny, in most situations, the protection and relief that the statute may have been attempting to grant. Given the facts in the record and the language of NRS 687B.110, it can be said as a matter of law that Mr. Randono's failure to disclose his history of hypertension on his insurance application is sufficient to prevent recovery of the insurance proceeds.[3]

For the reasons noted above, we affirm the summary judgment entered by the district court.

YOUNG, C. J., SPRINGER and ROSE, JJ., concur.

MOWBRAY, J., dissenting:

Respectfully, I dissent.

Appellant's husband, now deceased, purchased from respondent insurance company a $50,000.00 policy on his life naming his wife, the appellant, as beneficiary. The husband died of cancer. The company has refused to pay the widow the $50,000.00 on the grounds that the husband, when checking the application forms at the time the policy was issued, checked the "no" box rather than the "yes" box when responding to an inquiry whether he had ever been treated for hypertension.

Although when the husband obtained the policy he had the pulse and blood pressure of a "high school athlete," the company learned after the husband's death that he had earlier been treated for hypertension. There was no showing, relation or connection that hypertension caused the husband's death. In the absence of some relation, connection or causation, I believe that the com-

---

[3]Although we share in the dissent's sympathy for Mr. Randono's widow, we do not see a basis for relief in the fact that the insured's blood pressure (132/84) may have approached that of a "high school athlete" at or about the date of his insurance application. Within less than two years prior to that date, Mr. Randono suffered from both high blood pressure and malignant hypertension. According to an uncontroverted affidavit of record, if CUNA had been aware of the history of Mr. Randono's serious hypertension, his premium rate would have been three times greater than that which he was charged. In order to grant the widow relief under these facts, we would have to disregard both the statute and our obligation to apply it as enacted by the legislature.

pany should honor its agreement and pay the $50,000.00 due the widow under the policy. The company was willing to accept his premiums, and only when he died did they raise the issue of hypertension, which had nothing to do with his death from the catastrophic cancer.

Therefore, I would reverse and remand the case to the district court with instructions to enter judgment for the appellant with costs and attorney's fees.[1]

---

[1]Moreover, as former Assemblyman John C. Homer stated during the third reading of the bill leading to the enactment of NRS 687B.110, "[t]his bill was to protect the consumer." Hearing on A.B. 416, Fifty-sixth Session, 1971, *Journal of the Assembly,* p. 957.