971 P.2d 793 (1998)
STATE INDUSTRIAL INSURANCE SYSTEM, Appellant,
v.
Mark ENGEL, Respondent.
No. 29234.
Supreme Court of Nevada.
December 30, 1998.
*794 Lenard T. Ormsby, General Counsel, and John R. McGlamery, Associate General Counsel, State Industrial Insurance System, Carson City, for appellant.
Edward M. Bernstein & Associates and Laurence B. Irwin, Las Vegas, for respondent.

OPINION
MAUPIN, J.
Respondent Mark Engel ("Engel") injured his lower back in the course of his employment. The severity of the injury prevented his return to work in his previous job capacity. Because his employer could not accommodate his limitations, Engel sought vocational rehabilitation benefits pursuant to NRS 616C.590.[1] On April 25, 1995, Engel signed a vocational rehabilitation agreement with the State Industrial Insurance System ("SIIS"), acknowledging his responsibility to participate in a rehabilitation plan pursuant to NRS 616C.555.[2]
On August 15, 1995, the SIIS learned that Engel had contracted non-industrial tuberculosis. Because of a quarantine imposed by the Washoe County Health Department, Engel was unable to attend a scheduled meeting with a rehabilitation counselor assigned to develop his vocational rehabilitation program.
The SIIS suspended Engel's rehabilitation benefits until he could fully participate in the vocational rehabilitation program. On appeal, a Department of Administration hearing officer affirmed the suspension of benefits. Thereafter, an appeals officer reversed these determinations and ordered the SIIS to pay Engel vocational rehabilitation maintenance benefits during his tuberculosis quarantine.
The SIIS filed a petition for judicial review in the Second Judicial District Court, which was denied on August 27, 1996. The SIIS timely appealed. We affirm.

DISCUSSION

Standard of Review
This case presents an issue of first impression in Nevada: namely, whether the SIIS may suspend vocational rehabilitation benefits during a period of temporary nonparticipation in a vocational rehabilitation program, *795 where the failure to participate is not volitional.
The function of this court in reviewing an administrative decision is identical to that of the district court. Hudson v. Horseshoe Club Operating Co., 112 Nev. 446, 452, 916 P.2d 786, 790 (1996). A reviewing court shall not substitute its judgment for that of an agency with regard to a question of fact. NRS 233B.135(3). However, questions of law are reviewed de novo. SIIS v. United Exposition Services Co., 109 Nev. 28, 30, 846 P.2d 294, 295 (1993). The administrative construction of a statute is a question of law requiring independent appellate review. Maxwell v. SIIS, 109 Nev. 327, 329, 849 P.2d 267, 269 (1993).

The SIIS improperly suspended Engel's vocational rehabilitation maintenance pursuant to NRS 616C.575.
NRS 616C.575(2) defines "vocational rehabilitation maintenance" as the "amount of compensation paid to an injured employee while he is participating in a program of vocational rehabilitation ...." (Emphasis added.)
NRS 616C.575(2) provides that vocational rehabilitation maintenance shall be paid to an injured employee only when he or she "is participating" in a program of vocational rehabilitation. Where a statute is clear on its face, "[w]e are not empowered to go beyond the face of a statute to lend it a construction contrary to its clear meaning." Union Plaza Hotel v. Jackson, 101 Nev. 733, 736, 709 P.2d 1020, 1022 (1985).
Because the legislature did not distinguish between excusable and inexcusable non-participation, the SIIS argues that the plain meaning of NRS 616C.575(2) compels the conclusion that any non-participation, volitional or non-volitional, bars eligibility for vocational rehabilitation benefits.[3]
NRS 616C.575 notwithstanding, Engel contends that NRS 616C.230(4) governs this dispute:
An injured employee's compensation, other than accident benefits, must be suspended if:
(a) A physician or chiropractor determines that the employee is unable to undergo treatment, testing or examination for the industrial injury solely because of a condition or injury that did not arise out of and in the course of his employment; and
(b) It is within the ability of the employee to correct the non-industrial condition or injury.
Engel argues that NRS 616C.230(4)(a) and (b) do not authorize the SIIS to suspend an employee's benefits where, as here, it is not within the employee's ability to correct the non-industrial condition. Accordingly, Engel contends that he is eligible for compensation despite his quarantine for active tuberculosis. The appeals officer and the district court agreed. Although we conclude this analysis is not entirely correct, we affirm the district court for the reasons set forth below. See Rosenstein v. Steele, 103 Nev. 571, 575, 747 P.2d 230, 233 (1987).
NRS 616C.230(4) provides that the SIIS must suspend benefits if an employee is "unable to undergo treatment, testing or examination for [an] industrial injury" due to a non-industrial condition and it is within his ability to correct the non-industrial condition. However, while NRS 616C.230(4) sets forth the general circumstances under which the SIIS must suspend benefits other than "accident benefits," it does not govern all situations where benefits may be discontinued. NRS 616C.575 governs conditions for the payment of vocational rehabilitation benefits; an issue not encompassed by the general suspension provisions of NRS 616C.230(4). However, there is no clear directive from the legislature that a worker is not "participating" under NRS 616C.575 during a non-volitional absence from a rehabilitation program *796 due to illness. Contrary to the position taken by the SIIS, the only time at which maintenance by statute "may not be paid" is when the injured worker "refuses" to participate. Thus, to promote the purposes of the rehabilitation statute, we conclude that non-participation, justifying suspension of benefits must be willful, and that intervening illness does not suspend "participation."[4]
We therefore hold that the SIIS, pursuant to NRS 616C.575, may not suspend vocational rehabilitation benefits when an employee, who is otherwise eligible to receive such benefits, is temporarily unable to participate in the requisite vocational rehabilitation program as a result of a non-industrial medical condition.
The judgment of the district court is affirmed.[5]
SPRINGER, C.J., and ROSE, J., concur.
YOUNG, J., with whom SHEARING, J., agrees, dissenting.
The notion that the legislature intended for the citizens of Nevada to pay vocational rehabilitation benefits to individuals who are not participating in a vocational rehabilitation program strains credibility, defies logic, and, I believe, is in direct contravention of the plain meaning of both the Nevada Revised Statutes and the Nevada Administrative Code. Therefore, I must respectfully disagree with my colleagues in the majority.
As the majority aptly notes, "[w]e are not empowered to go beyond the face of a statute to lend it a construction contrary to its clear meaning." Union Plaza Hotel v. Jackson, 101 Nev. 733, 736, 709 P.2d 1020, 1022 (1985). Indeed,
[u]nder long established principles of statutory construction, when a statute is susceptible to but one natural or honest construction, that alone is the construction that can be given. We have also consistently held that where there is no ambiguity in a statute, there is no opportunity for judicial construction and the law must be followed regardless of result.
Randono v. CUNA Mutual Ins. Group, 106 Nev. 371, 374, 793 P.2d 1324, 1326 (1990) (citations omitted). I believe NRS 616C.575(2) has but one natural or honest construction.
Nevada Revised Statute 616C.575(2) is clear and unambiguous on its face: vocational rehabilitation maintenance is the "amount of compensation paid to an injured employee while he is participating in a program of vocational rehabilitation...." (Emphasis added.) The legislature conspicuously fails to make any distinction between excusable and inexcusable non-participation.
In footnote three, the majority discusses the inapplicability of Nevada Administrative Code ("NAC") provisions 616.102 and 616.0835. They assert that these regulations are inapplicable because Engel did not "refuse," or make a volitional choice not to participate in a rehabilitation program. Contrary to the majority's suggestion, refusal to participate is but one ground for termination of benefits, not necessarily the only one.
These sections of NAC, promulgated by the Division of Industrial Relations, add further credence to a plain meaning interpretation of the statute. In addition to a worker's refusal to participate as a basis for suspension or termination of benefits, NAC states that vocational rehabilitation benefits may also be suspended or terminated if an injured employee fails to report for scheduled activities or fails to participate in a program of vocational rehabilitation. See NAC 616.0835(a)(2) and NAC 616.102(2)(a) (1995) (presently codified as NAC 616C.577(a)(2) and NAC 616C.601(2)(a) (1998), respectively). *797 These subsections do not require the worker actually to refuse to participate in a rehabilitation program for benefits to be terminated; they require merely the lack of participation.
The crux of the majority's reasoning seems to reside in their interpretation of the word "participating," as it is used in NRS 616C.575(2). The majority states that the legislature provides no "clear directive" that a worker's non-volitional absence from a vocational rehabilitation program may preclude him or her from receiving benefits. Presumably, the word "participating," as it is interpreted by the majority, takes on a new meaning that includes not merely the actual participation in a vocational rehabilitation program, but also phantom participation whenever an employee has not overtly refused to participate. I believe this construction of the statute will frustrate the purposes of the vocational rehabilitation statute.
Moreover, stretching the definition of "participating" to include excusable non-participation defies the "clear directive" from the legislature that the statute is not to be construed broadly or liberally. In its legislative declarations for the Nevada Industrial Insurance Act the legislature addresses this issue. The statute reads as follows:
1. The provisions of chapters 616A to 617, inclusive, of NRS must be interpreted and construed to ensure the quick and efficient payment of compensation to injured and disabled employees at a reasonable cost to the employers who are subject to the provisions of those chapters;
2. A claim for compensation filed pursuant to the provisions of chapters 616A to 616D, inclusive, ... must be decided on its merit and not according to the principle of common law that requires statutes governing workers' compensation to be liberally construed because they are remedial in nature;
....
4. For the accomplishment of these purposes, the provisions of chapters 616A to 617, inclusive, of NRS must not be interpreted or construed broadly or liberally in favor of an injured or disabled employee or his dependents, or in such a manner as to favor the rights and interests of an employer over the rights and interests of an injured or disabled employee or his dependents.
NRS 616A.010 (1998) (emphasis added); see also Nevada Industrial Insurance Act, 1993 Nev. Stat., ch. 265, sec. 11, §§ 1, 2, and 4, at 660. I believe the majority's interpretation of the meaning of the word "participating" clearly defies the legislative intent.
Finally, the majority concludes that "[c]ontrary to the position taken by SIIS, the only time at which maintenance by statute `may not be paid' is when the injured worker `refuses' to participate." This holding, according to the majority, will "promote the purposes of the rehabilitation statute." I find it troubling that the majority offers no citation to authority, analysis, or support for these conclusory remarks.
Although it seems to belabor the obvious, the purpose of Nevada's vocational rehabilitation program is to place injured or disabled workers back in the work force. The majority's holding does not promote that purpose and, indeed, frustrates that purpose by expending scarce funds on workers who are not actually rehabilitating. For those workers who are unable to "participate" in a vocational rehabilitation program, the legislature has created other safety nets in the form of various industrial insurance and welfare benefit programs.
I believe that the payment of vocational rehabilitation benefits was designed to be concurrent with actual participation in a vocational rehabilitation program. Hence, it is Engel's non-participation that is dispositive in the present case, not the reason for his non-participation.
I am cognizant of the unfortunate situation in which Engel finds himself, however, I do not believe that his remedy lies in the vocational rehabilitation program. I am not suggesting that he is forever precluded from receiving vocational rehabilitation benefits but, rather, that his eligibility be reevaluated when his illness no longer prevents him from participating in a rehabilitation program. In the meantime, other alternative benefits such as supplemental security income or welfare benefits may offer him relief until he is able *798 to participate in a vocational rehabilitation program. Indeed, the statutory scheme does not contemplate vocational rehabilitation benefits as the sole means of achieving the goals of rehabilitation. See NRS 616C.530 (articulating priorities for returning injured employee to work, including providing training and job skills in existing or new vocation).
I do not believe that excusable non-participation is tantamount to actual participation. Accordingly, I would hold that SIIS, pursuant to NRS 616C.575, may suspend vocational rehabilitation benefits when an employee is unable to actually participate in a vocational rehabilitation program.[1]
SHEARING, J., concurs.
NOTES
[1] NRS 616C.590(1)(a)-(c) states that an injured employee is eligible for vocational rehabilitation services if:

(a) The treating physician or chiropractor approves the return of the injured employee to work but imposes permanent restrictions that prevent the injured employee from returning to the position that he held at the time of his injury;
(b) The injured employee's employer does not offer employment that the employee is eligible for considering the restrictions imposed pursuant to paragraph (a); and
(c) The injured employee is unable to return to gainful employment at a gross wage that is equal to or greater than 80 percent of the gross wage that he was earning at the time of his injury.
[2] NRS 616C.555 requires the development of vocational rehabilitation programs for persons qualifying for rehabilitation assistance.
[3] The hearing officer below relied on NAC 616.102 and NAC 616.0835, regulations promulgated pursuant to NRS 616C.575(1)(a) and (b), to justify the determination to suspend benefits. These regulations concern grounds for suspension, which include refusal to cooperate with the insurer in the development of a program and failure to report for scheduled activities. However, because there was no refusal to participate, these regulations do not apply.
[4] NRS 616C.555(3) provides maximum time periods for rehabilitation programs. However, NRS 616C.560 provides for reasonable extensions of these deadlines. Thus, the NRS 616C.555(3) time frames are not jurisdictional as to the length of any particular program and, therefore, not jurisdictional as to the period during which rehabilitation maintenance may be paid.
[5] Our decision today also provides a level of certainty in enforcement. The dissent's construction of the SIIS rehabilitation scheme leaves open the problem of how much nonparticipation in connection with less serious illnesses would be tolerated.
[1] I agree with my colleagues that the district court misapplied NRS 616C.230(4).