Young, J.,
with whom Shearing, J., agrees, dissenting:
The notion that the legislature intended for the citizens of Nevada to pay vocational rehabilitation benefits to individuals who are not participating in a vocational rehabilitation program strains credibility, defies logic, and, I believe, is in direct contravention of the plain meaning of both the Nevada Revised Statutes and the Nevada Administrative Code. Therefore, I must respectfully disagree with my colleagues in the majority.
As the majority aptly notes, “[w]e are not empowered to go beyond the face of a statute to lend it a construction contrary to its clear meaning.” Union Plaza Hotel v. Jackson, 101 Nev. 733, 736, 709 P.2d 1020, 1022 (1985). Indeed,
[ujnder long established principles of statutory construction, when a statute is susceptible to but one natural or honest construction, that alone is the construction that can be given. We have also consistently held that where there is no ambiguity in a statute, there is no opportunity for judicial construction and the law must be followed regardless of result.
Randono v. CUNA Mutual Ins. Group, 106 Nev. 371, 374, 793 *1377 P.2d 1324, 1326 (1990) (citations omitted). I believe NRS 616C.575(2) has but one natural or honest construction.
Nevada Revised Statute 616C.575(2) is clear and unambiguous on its face: vocational rehabilitation maintenance is the “amount of compensation paid to an injured employee while he is participating in a program of vocational rehabilitation ...” (Emphasis added.) The legislature conspicuously fails to make any distinction between excusable and inexcusable non-participation.
In footnote three, the majority discusses the inapplicability of Nevada Administrative Code (“NAC”) provisions 616.102 and 616.0835. They assert that these regulations are inapplicable because Engel did not “refuse,” or make a volitional choice not to participate in a rehabilitation program. Contrary to the majority’s suggestion, refusal to participate is but one ground for termination of benefits, not necessarily the only one.
These sections of NAC, promulgated by the Division of Industrial Relations, add further credence to a plain meaning interpretation of the statute. In addition to a worker’s refusal to participate as a basis for suspension or termination of benefits, NAC states that vocational rehabilitation benefits may also be suspended or terminated if an injured employee fails to report for scheduled activities or fails to participate in a program of vocational rehabilitation. See NAC 616.0835(2)(a)(2) and NAC 616.102(2)(a) (1995) (presently codified as NAC 616C.577(2)(a)(2) and NAC 616C.601(2)(a) (1998), respectively). These subsections do not require the worker actually to refuse to participate in a rehabilitation program for benefits to be terminated; they require merely the lack of participation.
The crux of the majority’s reasoning seems to reside in their interpretation of the word “participating,” as it is used in NRS 616C.575(2). The majority states that the legislature provides no “clear directive” that a worker’s non-volitional absence from a vocational rehabilitation program may preclude him or her from receiving benefits. Presumably, the word “participating,” as it is interpreted by the majority, takes on a new meaning that includes not merely the actual participation in a vocational rehabilitation program, but also phantom participation whenever an employee has not overtly refused to participate. I believe this construction of the statute will frustrate the purposes of the vocational rehabilitation statute.
Moreover, stretching the definition of “participating” to include excusable non-participation defies the “clear directive” from the legislature that the statute is not to be construed broadly or liberally. In its legislative declarations for the Nevada Industrial Insurance Act the legislature addresses this issue. The statute reads as follows:
1. The provisions of chapters 616A to 617, inclusive, of *1378 NRS must be interpreted and construed to ensure the quick and efficient payment of compensation to injured and disabled employees at a reasonable cost to the employers who are subject to the provisions of those chapters;
2. A claim for compensation filed pursuant to the provisions of chapters 616A to 616D, inclusive, . . . must be decided on its merit and not according to the principle of common law that requires statutes governing workers’ compensation to be liberally construed because they are remedial in nature;
4. For the accomplishment of these purposes, the provisions of chapters 616A to 617, inclusive, of NRS must not be interpreted or construed broadly or liberally in favor of an injured or disabled employee or his dependents, or in such a manner as to favor the rights and interests of an employer over the rights and interests of an injured or disabled employee or his dependents.
NRS 616A.010 (1998) (emphasis added); see also Nevada Industrial Insurance Act, 1993 Nev. Stat., ch. 265, sec. 11, §§ 1, 2 and 4, at 660. I believe the majority’s interpretation of the meaning of the word “participating” clearly defies the legislative intent.
Finally, the majority concludes that “[c]ontrary to the position taken by SIIS, the only time at which maintenance by statute ‘may not be paid’ is when the injured worker ‘refuses’ to participate.” This holding, according to the majority, will “promote the purposes of the rehabilitation statute.” I find it troubling that the majority offers no citation to authority, analysis, or support for these conclusory remarks.
Although it seems to belabor the obvious, the purpose of Nevada’s vocational rehabilitation program is to place injured or disabled workers back in the work force. The majority’s holding does not promote that purpose and, indeed, frustrates that purpose by expending scarce funds on workers who are not actually rehabilitating. For those workers who are unable to “participate” in a vocational rehabilitation program, the legislature has created other safety nets in the form of various industrial insurance and welfare benefit programs.
I believe that the payment of vocational rehabilitation benefits was designed to be concurrent with actual participation in a vocational rehabilitation program. Hence, it is Engel’s non-participation that is dispositive in the present case, not the reason for his non-participation.
I am cognizant of the unfortunate situation in which Engel finds himself, however, I do not believe that his remedy lies in the voca *1379 tional rehabilitation program. I am not suggesting that he is forever precluded from receiving vocational rehabilitation benefits but, rather, that his eligibility be reevaluated when his illness no longer prevents him from participating in a rehabilitation program. In the meantime, other alternative benefits such as supplemental security income or welfare benefits may offer him relief until he is able to participate in a vocational rehabilitation program. Indeed, the statutory scheme does not contemplate vocational rehabilitation benefits as the sole means of achieving the goals of rehabilitation. See NRS 616C.530 (articulating priorities for returning injured employee to work, including providing training and job skills in existing or new vocation).
I do not believe that excusable non-participation is tantamount to actual participation. Accordingly, I would hold that SIIS, pursuant to NRS 616C.575, may suspend vocational rehabilitation benefits when an employee is unable to actually participate in a vocational rehabilitation program.[1]

 I agree with my colleagues that the district court misapplied NRS 616C.230(4).