ROBERT GRIFFIN, Appellant, v. OLD REPUBLIC
INSURANCE COMPANY, Respondent.

No. 44902

May 11, 2006                                           133 P.3d 251

*Day R. Williams*, Carson City, for Appellant.

*Woodburn & Wedge* and *Stephen S. Kent*, Reno, for Respondent.

*Bradley Drendel & Jeanney* and *Thomas E. Drendel*, Reno, for
Amicus Curiae Nevada Trial Lawyers Association.

*Lemons Grundy & Eisenberg* and *Robert L. Eisenberg*, Reno,
for Amici Curiae Association of Defense Counsel of Northern
California and Nevada and the Association of Defense Counsel of
Nevada.

# OPINION

By the Court, DOUGLAS, J.:

In response to a certified question submitted by the United States Court of Appeals for the Ninth Circuit, we consider whether

an insurer may deny coverage under an aviation insurance policy for failure to comply with an unambiguous exclusion if there is no causal connection between the exclusion and the loss. We hold that insurers need not establish a causal connection between an aviation policy exclusion and the loss in order to avoid liability so long as the exclusion is unambiguous, narrowly tailored, and essential to the risk undertaken by the insurer.

## FACTUAL AND PROCEDURAL HISTORY

In September 2001, appellant Robert Griffin sustained severe personal injuries when a plane piloted by Kevin Jensen crashed into Griffin's backyard. Jensen had purchased the plane a few months earlier and had bought insurance through respondent Old Republic Insurance Company. Old Republic's aviation policy excluded coverage when "the Airworthiness Certificate of the aircraft is not in full force and effect" or when "the aircraft has not been subjected to the appropriate airworthiness inspection(s) as required under current applicable Federal Air Regulations for the operations involved." Further, Jensen initialed a clause in the insurance application, stating that there would be no coverage for his aircraft "unless a standard airworthiness certificate is in full force and effect."

Griffin filed suit in state court against Jensen and his wife, and Old Republic filed an action in the United States District Court for the District of Nevada seeking a declaratory judgment. Old Republic contended that it had no obligation to pay damages to Griffin or Jensen because the insurance policy expressly excluded coverage for an aircraft without an airworthiness certificate and, although Jensen had possessed a current airworthiness certificate for his plane at the inception of the policy, the certificate had lapsed and was not "in full force and effect" at the time of the accident.

The federal district court held that even if Jensen's failure to maintain an airworthiness certificate was not related to the cause of the accident, Nevada law did not require a causal connection between the exclusion and the loss in order for the insurer to avoid liability, and the district court granted summary judgment for Old Republic. Griffin appealed to the Court of Appeals for the Ninth Circuit, which subsequently submitted the following certified question of law to this court:

> Under Nevada law, may an insurer deny coverage under an aviation insurance policy for failure to comply with an unambiguous requirement of the policy or is a causal connection between the insured's noncompliance and the accident required?

## DISCUSSION

### Unambiguous policy exclusion

The terms of an insurance policy must be construed "in their plain and ordinary sense and from the viewpoint of one not trained in law."[1] When the insurer "restricts coverage of a policy, it should employ language that clearly and distinctly communicates to the insured the nature of the limitation."[2] "[A]ny ambiguity or uncertainty in an insurance policy must be construed against the insurer and in favor of the insured."[3] Although this court "has no authority to alter the terms of an unambiguous contract,"[4] we may void an unambiguous exclusion if it violates public policy.[5] As the question presented to this court involves an unambiguous insurance exclusion, we focus our attention on public policy.

Griffin contends that the modern trend is to require a causal connection between an insured's noncompliance and the loss for the insurer to avoid liability. Griffin also argues that existing Nevada law supports the adoption of this "modern trend." Old Republic asserts that Nevada law does not require a causal connection and that the majority of jurisdictions that have considered this issue have held that a causal connection between the insured's noncompliance and the loss is not required in order for the insurer to avoid liability.

Griffin cites to our decision in *McDaniel v. Sierra Health & Life Insurance Co.*, to support his proposition that Nevada requires insurers to show a causal connection between noncompliance with an exclusion and the loss to avoid liability.[6] In *McDaniel*, the insured was driving while legally intoxicated and failed to negotiate a left turn, causing his car to strike a guardrail and flip over, thereby killing himself and injuring his passenger.[7] The insured's accidental death benefit policy expressly excluded losses that were "indirectly or directly a result of" the commission of a felony:

> "[a] loss that is directly or indirectly a result of one of the following is not a Covered Loss even though it was caused by an

---

[1]*Vitale v. Jefferson Ins. Co.*, 116 Nev. 590, 594, 5 P.3d 1054, 1057 (2000).

[2]*Id.*

[3]*Id.*; *see also Clark v. Truck Ins. Exchange*, 95 Nev. 544, 546, 598 P.2d 628, 629 (1979).

[4]*Canfora v. Coast Hotels & Casinos, Inc.*, 121 Nev. 771, 776, 121 P.3d 599, 603 (2005).

[5]*See generally Continental Ins. Co. v. Murphy*, 120 Nev. 506, 96 P.3d 747 (2004).

[6]118 Nev. 596, 600, 53 P.3d 904, 906 (2002).

[7]*Id.* at 597, 53 P.3d at 905.

accidental bodily injury. . . . (6) An attempt to commit, or committing, an assault or felony by the insured."[8]

We noted that "[c]ourts interpreting exclusionary provisions like the one at issue here have uniformly held that recovery is not limited unless there is some causal connection between the felony and the loss suffered."[9] We went on to analyze causation under a "remotely connected" test and determined that the insured's felony drunk driving was indirectly connected to the cause of his death; and therefore, coverage was barred under the exclusion.[10]

However, *McDaniel* is inapplicable to the question at bar. In *McDaniel*, the exclusion plainly stated that a causal connection was required between the exclusion and the loss, as it excluded coverage for any loss that was "directly or indirectly a result of" a felony. The language specifically indicated that some causal connection, whether direct or indirect, must exist between the commission of the felony and the loss in order for the insurer to avoid liability.

No such causal language exists in the policy exclusion here. Old Republic's insurance policy unambiguously states that an airworthiness certificate must be in full force and effect and that the aircraft must be subjected to appropriate airworthiness inspections in order for coverage to apply. We will not rewrite contract provisions that are otherwise unambiguous.[11] Nor will we "attempt to increase the legal obligations of the parties where the parties intentionally limited such obligations."[12] Consequently, we will not imply a causality requirement in Old Republic's airworthiness exclusion when no causal connection language is present.

Unlike *McDaniel*, in *Randono v. CUNA Mutual Insurance Group* we held that an insurer's refusal to pay death benefits to the insured's widow was justified because the insured misrepresented that he did not have high blood pressure on his life insurance application.[13] High blood pressure did not cause the insured's death because the insured died of stomach cancer.[14] Nonetheless, we held that the life insurance premiums would have been much

---

[8]*Id.* at 598, 53 P.3d at 906-07.

[9]*Id.* at 600, 53 P.3d at 907.

[10]*Id.* at 601, 53 P.3d at 908.

[11]*Senteney v. Fire Ins. Exchange*, 101 Nev. 654, 656, 707 P.2d 1149, 1150 (1985).

[12]*Id.*

[13]106 Nev. 371, 375, 793 P.2d 1324, 1326-27 (1990).

[14]*Id.* at 372, 793 P.2d at 1324-25.

higher if the insured had reported his hypertension and that any misrepresentation that was material " 'to the hazard assumed by the insurer' " allowed the insurer to refuse coverage despite the absence of a causal connection.[15]

Similar Nevada cases have not required insurers to show a causal connection between the exclusion and the loss in order to avoid liability under an unambiguous insurance exclusion.[16] Additionally, a majority of jurisdictions that have considered causality have held that insurers may avoid liability under a policy exclusion, even when the insured's noncompliance with the exclusion does not cause the loss, so long as the exclusion is unambiguous.[17]

The Supreme Court of Arizona, for instance, has held that where an exclusion is narrow and specifically delineates what is and is not covered and "where the relevant clause is an *exclusion* of coverage" and not a condition subsequent, and where the exclusion is "completely unambiguous," then "no causal connection need be proved" in order for the insurer to avoid liability.[18] Further, the court reasoned that "public policy favors a rule that encourages owners and operators of aircraft to obey and satisfy safety regulations."[19]

With regard to aircraft safety regulations, NRS 493.150 provides that "[i]t shall be unlawful for any person to operate or cause or authorize to be operated any civil aircraft within this State unless

---

[15]*Id.* at 375-76, 793 P.2d at 1326-27 (quoting NRS 687B.110). NRS 687B.110 prevents loss of coverage due to an insured's nonmaterial misrepresentations in an insurance application.

[16]*See Fire Ins. Exch. v. Cornell*, 120 Nev. 303, 306-07, 90 P.3d 978, 980 (2004) (where activity fell under an unambiguous sexual molestation exclusion of a homeowner's insurance policy, the insurer was not obligated to defend or indemnify the insured); *Farmers Ins. Exch. v. Neal*, 119 Nev. 62, 65, 64 P.3d 472, 473 (2003) (unambiguous clause excluding uninsured motorist coverage above the statutory minimum was enforceable); *Dwello v. American Reliance Insurance Co.*, 115 Nev. 422, 424-25, 990 P.2d 190, 191-92 (1999) (a loss occurring during babysitting fell under an unambiguous business pursuits exclusion in a homeowner's policy, and the insurance company was not required to defend or indemnify the insured); *Farmers Ins. Exchange v. Young*, 108 Nev. 328, 332-33, 832 P.2d 376, 378-79 (1992) (automobile insurance exclusion limiting liability coverage for nonpermissive users was unambiguous and enforceable). These cases do not involve aviation insurance policies and are simply illustrative of instances where this court upheld unambiguous insurance exclusions without regard to causal connection.

[17]*See, e.g., Hollywood Flying Service v. Compass Ins. Co.*, 597 F.2d 507, 508-09 (5th Cir. 1979); *Grigsby v. Houston Fire & Casualty Insurance Co.*, 148 S.E.2d 925, 927 (Ga. Ct. App. 1966); *U.S. Fire Ins. v. W. Monroe Charter Service*, 504 So. 2d 93, 99-100 (La. Ct. App. 1987); *Security Mut. Cas. Co. v. O'Brien*, 662 P.2d 639, 640-41 (N.M. 1983); *Avemco Ins. Co. v. White*, 841 P.2d 588, 590 (Okla. 1992).

[18]*Security Ins. Co. v. Andersen*, 763 P.2d 246, 249 (Ariz. 1988).

[19]*Id.* at 250.

such aircraft has an appropriate effective certificate, permit or license issued by the United States." This court has also held that federal aviation regulations are a legitimate means of insuring safe flight and that federal aviation regulations "are designed to promote safe conduct of air traffic."[20]

We agree that aircraft safety is enhanced when policy exclusions relating to safety are upheld, regardless of causal connection. Although the minority approach requires a causal connection,[21] we now join the majority and hold that insurers may avoid liability under safety-related exclusions in aviation insurance policies, even when the insured's noncompliance with the exclusion is not causally related to the loss, so long as the exclusion is unambiguous, narrowly tailored, and essential to the risk undertaken by the insurer.

An exclusion is narrowly tailored if it "clearly and distinctly communicates to the insured the nature of the limitation,"[22] and specifically delineates what is and is not covered.[23] Here, the exclusion clearly states that there is no coverage when "the Airworthiness Certificate of the aircraft is not in full force and effect" or when "the aircraft has not been subjected to the appropriate airworthiness inspection(s) as required under current applicable Federal Air Regulations for the operations involved." This language clearly communicates that Jensen's aircraft *would not* be covered unless a standard airworthiness certificate was in full force and effect.[24] Therefore, the exclusion is narrowly tailored because it clearly and distinctly communicates the nature of the limitation and delineates that Jensen's plane would not be covered without a valid airworthiness certificate.

An exclusion is essential to the risk undertaken by the insurer if the clause excludes activities that are material to the acceptance of

---

[20]*Lightenburger v. Gordon*, 81 Nev. 553, 577, 407 P.2d 728, 741 (1965), *overruled on other grounds by Motenko v. MGM Dist., Inc.*, 112 Nev. 1038, 921 P.2d 933 (1996).

[21]*See, e.g., Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 937-38 (Tex. 1984).

[22]*Vitale*, 116 Nev. at 594, 5 P.3d at 1057.

[23]*See Andersen*, 763 P.2d at 249.

[24]We note that the record indicates that Jensen was aware of the exclusion and he was familiar with the federal aviation regulations that required the annual inspection. Jensen also knew that the regulations forbade the operation of his plane if it had not received an annual inspection within the preceding twelve months.

the risk, or are material to the hazard assumed by the insurer.[25] Federal aviation regulations specifically require aircraft owners and operators to obtain airworthiness certificates in order to operate their aircraft, and airworthiness certificates require owners and operators to ensure that their aircraft undergo regular maintenance and annual inspections by certified mechanics. Presumably, an insurer would charge a much higher premium, or refuse to insure an aircraft altogether, if the aircraft was not subjected to regular maintenance and annual inspections as required by federal aviation regulations. The failure to have an annual inspection and to have an airworthiness certificate is material to the hazard assumed by the insurer. Therefore, an airworthiness certificate is essential to the risk undertaken by an insurer. As the airworthiness exclusion at issue in this case is narrowly tailored and essential to the risk undertaken by the insurer, it applies to exclude coverage.[26]

### Failure to notify

As a final matter, Griffin argues that Old Republic was required to ensure that Jensen complied with the unambiguous exclusion and that Old Republic's failure to notify Jensen of his noncompliance constitutes a waiver of the exclusion pursuant to NRS 687B.320.

NRS 687B.320 describes when and how an insurer may cancel an insurance policy before the policy's expiration; it requires the insurer to give adequate notice of cancellation, and necessitates a triggering event in order for the insurer to be able to cancel the insurance policy. Examples of triggering events include failure to pay insurance premiums, fraud, and conviction of a crime increasing the insured's risk.

However, the question before the court is not one of policy cancellation but one of policy exclusion. Other jurisdictions have distinguished policy exclusions from policy cancellation. An exclusionary provision excludes coverage for certain activities from the outset of the insurance contract[27] and preemptively excludes certain conduct from coverage in an effort to minimize risk.[28] Conversely,

---

[25]*See* NRS 687B.110(2).

[26]Griffin contends that Nevada disfavors the preclusion of recovery for technical noncompliance with unambiguous exclusions and cites to *Davenport v. Republic Insurance Co.*, 97 Nev. 152, 154, 625 P.2d 574, 575 (1981). *Davenport*, however, involved an insured who failed to file a sworn proof of loss form but who notified the insurer of the loss by phone immediately after it occurred. *Davenport* did not address causality, and failure to file the proof of loss form is far removed from failing to obtain federally mandated aircraft safety inspections. Therefore, *Davenport* does not apply to our analysis.

[27]*Andersen*, 763 P.2d at 251.

[28]*See id.*; *see also O'Brien*, 662 P.2d at 640-41.

a cancellation normally occurs as a result of, and as a condition subsequent to, an event that violates the insurance policy.[29] We have consistently held that parties may freely contract, and an insurer may lawfully exclude risks from coverage under its policy. We distinguish exclusions from cancellations, and therefore, NRS 687B.320 does not apply to policy exclusions.[30]

## CONCLUSION

We answer the certified question in the affirmative, holding that insurers need not establish a causal connection between a safety-related aviation policy exclusion and the loss in order to exclude coverage so long as the exclusion is unambiguous, narrowly tailored, and essential to the risk undertaken by the insurer.

ROSE, C. J., BECKER, MAUPIN, GIBBONS, HARDESTY and PARRAGUIRRE, JJ., concur.

---

[29]*See* NRS 687B.320(1).

[30]We note that the requirements set forth in NRS 687B.320 are not so different from the public policy requirements set forth in this opinion for aviation exclusions. An exclusion must be unambiguous, narrowly tailored, and essential to the risk undertaken by the insurer. Implied in these requirements is that the insured must have some actual or presumptive notice of the excluded activities in order for the insurer to be able to avoid liability. Here, Jensen testified that he was aware of the airworthiness requirements, that he had received training regarding certain airworthiness requirements, and that he had also initialed a clause in the insurance application that indicated that there would be no coverage unless an airworthiness certificate was in full force and effect. Nonetheless, we note that efforts by insurers to conceal or enshroud unambiguous exclusions by burying them in lengthy insurance policy contracts will not be tolerated, and we would look less favorably upon an unambiguous exclusion without adequate notice to the insured.