COAST HOTELS AND CASINOS, INC., DBA THE ORLEANS HOTEL AND CASINO, APPELLANT/CROSS-RESPONDENT, *v.* NEVADA STATE LABOR COMMISSION AND GAIL MAXWELL, ACTING LABOR COMMISSIONER, RESPONDENTS/CROSS-APPELLANTS, AND SANDRA MERANIAN, RESPONDENT.

No. 34906

November 15, 2001                                34 P.3d 546

*Barry L. Lieberman,* Las Vegas, for Appellant/Cross-Respondent.

*Frankie Sue Del Papa,* Attorney General, and *Keith E. Kizer* and *Dianna Hegeduis,* Deputies Attorney General, Las Vegas, for Respondents/Cross-Appellants.

*Sandra Meranian,* Las Vegas, in Proper Person, for Respondent.

## OPINION

*Per Curiam:*

Respondent, Sandra Meranian, a casino cashier, filed a claim for wages with respondents/cross-appellants, Nevada State Labor Commission, after her employer, appellant/cross-respondent, Coast Hotels and Casinos, Inc., d/b/a The Orleans Hotel and Casino (Orleans), deducted money from her wages for shortages in her cash drawer. Following an investigation, the Labor Commissioner issued a determination ordering the casino to pay Meranian the sum of $520.00. Orleans challenged the Labor Commission's determination, and a hearing officer subsequently determined that Meranian was entitled to a return of the money as wages from Orleans and imposed a statutory penalty on Orleans.[1] On judicial review, the district court upheld the award to Meranian, but set aside the statutory penalty. From that decision, Orleans appealed and the Labor Commission cross-appealed. For the following reasons, we affirm in part and reverse in part the order of the district court concerning the petition for judicial review.

### FACTS

Orleans hired Meranian as a cage cashier in December 1996. As with all new employees who handled cash, Orleans required that Meranian sign a form acknowledging Orleans' policy of withholding cash drawer shortages from employees' payroll checks. In the event of a shortage at the conclusion of any cashier's shift, Orleans would ask the employee responsible for the drawer to acknowledge the amount of the shortage and to sign a slip stating: "My signature above expressly authorizes my employer to withhold from my pay the shortage above in the box."

At the beginning of each shift, Meranian was placed in charge

---

[1]*See* NRS 608.110; NRS 608.040.

of a cash drawer containing $50,000.00. Orleans' policy requires cage cashiers to count the money at the beginning and end of each shift and to lock their drawer whenever they are away from it. Meranian received a key to her drawer at the beginning of each shift.

In February 1998, Orleans charged Meranian with a $20.00 shortage. In March 1998, Orleans charged Meranian with a $500.00 shortage. Meranian did not contest responsibility for the shortages. She signed shortage slips in both instances, and Orleans withheld a total of $520.00 from her payroll checks. Orleans discharged Meranian at the end of May 1998, apparently for reasons unrelated to the shortages at issue in this case.

In June 1998, Meranian filed a claim for wages with the Labor Commission, seeking reimbursement of the $520.00 withheld from her wages. The Labor Commission issued a determination letter to Orleans, ordering the casino to pay Meranian the sum of $520.00. Orleans contested the determination. A hearing was held, after which the hearing officer ordered Orleans to pay Meranian $520.00 and then imposed a statutory penalty on Orleans pursuant to NRS 608.040 in the amount of $2,548.00, but waived $2,000.00 of the penalty provided Orleans paid within a specified time period. On judicial review, the district court upheld the portion of the hearing officer's decision ordering payment of the $520.00 to Meranian, but reversed the statutory penalty imposed on Orleans.

## DISCUSSION

The questions before this court are of statutory construction, namely, whether the hearing officer properly interpreted the wage statutes applicable to this case. Questions of law are reviewed de novo.[2] "[A] reviewing court may undertake independent review of the administrative construction of a statute."[3]

### I. Statutory construction of NRS 608.110

NRS 608.110(1) permits an employer to withhold a portion of an employee's wages if the employee gives written authorization for the withholding:

> 1. This chapter does not preclude the withholding from the wages or compensation of any employee of any dues, rates or assessments becoming due to any hospital associa-

---

[2]*SIIS v. United Exposition Services Co.,* 109 Nev. 28, 30, 846 P.2d 294, 295 (1993).

[3]*American Int'l Vacations v. MacBride,* 99 Nev. 324, 326, 661 P.2d 1301, 1302 (1983).

tion or to any relief, savings or other department or association maintained by the employer or employees for the benefit of the employees, or other deductions authorized by written order of an employee.

The hearing officer concluded that Orleans could not rely upon NRS 608.110 because requiring an employee to sign a pre-employment acknowledgement of Orleans' cash shortage policy "was a prospective waiver of an employee's rights" and was not a "knowing and intelligent waiver of [the employee's] right to receive full pay." The hearing officer also concluded that agreements which require an employee to agree to a deduction as a condition to receiving compensation are void, and that deductions made pursuant to the statute must be for the benefit of the employee.

The primary issue before us is whether the disjunctive phrase "other deductions authorized by written order of an employee" in NRS 608.110(1) permits Orleans to withhold amounts equivalent to cash shortages from employees' wages, regardless of whether the withholding is for the benefit of the employee, so long as its employees sign shortage slips authorizing the withholding.

Orleans contends that the plain language of NRS 608.110(1) permits such withholdings. The Labor Commission, however, contends that all withholdings pursuant to NRS 608.110 must be for the benefit of the employee, because the rules of statutory construction require that a general phrase take its meaning from a specific phrase, and in this case, the general phrase "other deductions authorized by written order of an employee" in NRS 608.110(1) follows the specific phrase "for the benefit of the employees." The Labor Commission argues that when read together with NRS 608.016, which requires an employer to compensate an employee for each hour of work, and NRS 608.100(2), which makes it unlawful for employers to require employees to rebate or return any part of their wage, NRS 608.110(1) does not permit employers to withhold amounts equivalent to cash shortages from employees' wages.

When the language of a statute is plain and unambiguous, a court should give that language its ordinary meaning and not go beyond it.[4] "Under established principles of statutory construction, when a statute is susceptible to but one natural or honest construction, that alone is the construction that can be given."[5]

---

[4]*City Council of Reno v. Reno Newspapers,* 105 Nev. 886, 891, 784 P.2d 974, 977 (1989).

[5]*Randono v. CUNA Mutual Ins. Group,* 106 Nev. 371, 374, 793 P.2d 1324, 1326 (1990) (citations omitted).

However, when more than one interpretation of a statute can reasonably be drawn from its language, the statute is ambiguous and the plain meaning rule has no application.[6] Additionally, courts must construe statutes to give meaning to all of their parts and language, and this court will read each sentence, phrase, and word to render it meaningful within the context of the purpose of the legislation.[7]

We read the plain language of NRS 608.110(1) as Orleans reads it. Specifically, the clause ''other deductions authorized by written order of an employee'' is separated from the preceding clause by a comma and the disjunctive ''or.''[8] The word ''or'' is typically used to connect phrases or clauses representing alternatives.[9] The fact that the two phrases in NRS 608.110(1) describing permissible deductions are separated by a comma and the word ''or'' indicates that the phrase ''other deductions authorized by written order of an employee'' in NRS 608.110(1) is in the alternative to, and is not conditioned by, the preceding clause. Further, the preceding clause in NRS 608.110(1) contains the words ''for the benefit of the employees,'' but the clause at issue in this case does not contain that language of limitation.[10]

Generally, when the legislature has employed a term or phrase in one place and excluded it in another, it should not be implied where excluded.[11] The exclusion of the phrase ''for the benefit of the employees'' from the clause ''other deductions authorized by written order of an employee'' indicates that NRS 608.110(1) does not require that all withholdings benefit the employee, as long as the employee authorizes the deduction in writing.

Additionally, former versions of NRS 608.110 contained the title ''Withholding of portion of wages for employee's benefit'' whereas the current version of the statute contains the title ''Withholding of portion of wages.''[12] A title is typically prefixed to a statute in the form of a descriptive heading or a brief summary of the contents of the statute.[13] The title of a statute may be

[6]*Hotel Employees v. State, Gaming Control Bd.,* 103 Nev. 588, 591, 747 P.2d 878, 880 (1987).

[7]*Bd. of County Comm'rs v. CMC of Nevada,* 99 Nev. 739, 744, 670 P.2d 102, 105 (1983).

[8]*See* NRS 608.110(1).

[9]*See Random House Webster's College Dictionary* 917-18 (2d ed. 1997).

[10]*See* NRS 608.110(1).

[11]*See Pasadena Police Officers Ass'n v. Pasadena,* 797 P.2d 608, 614 (Cal. 1990).

[12]*See* NRS 608.110 (1997); NRS 608.110 (1999).

[13]*See Random House Webster's College Dictionary* 1350 (2d ed. 1997); *Black's Law Dictionary* 1032 (6th ed. 1991).

considered in determining legislative intent.[14] The deletion of the phrase ''for employee's benefit'' from the title of the current version of NRS 608.110 suggests that the legislature intended to permit withholding authorized in writing by the employee, including withholding for cash shortages, which is not necessarily for the employee's benefit.

Accordingly, we conclude that the plain language of the phrase ''other deductions authorized by written order of an employee'' in NRS 608.110(1) permits an employer to withhold amounts equivalent to cash shortages from an employee's wages if the employee authorizes the withholding in writing. Thus, the hearing officer in this case erroneously determined that Orleans was not authorized by NRS 608.110(1) to withhold $520.00 from Meranian's payroll check on the ground that the deduction was not made for the benefit of the employee. Further, the hearing officer erred by concluding that such a cash shortage policy itself, or the practice of requiring an employee to acknowledge the policy in writing, before being hired by the employer, violates NRS 608.110(1). Nothing in NRS 608.110(1) prohibits an employer from having a policy that requires an employee to reimburse the employer via payroll deduction for cash shortages attributable to the employee so long as the employee authorizes the deduction in writing, nor is there anything in the statute prohibiting an employer from requiring an employee to acknowledge the policy in writing prior to the commencement of employment.

## II. *The validity of the written authorization*

In this case, Meranian testified that she signed the shortage withholding authorizations. She also acknowledged receiving and signing the pre-employment form outlining Orlean's cash shortage withholding policy. However, Meranian stated that she only signed the withholding authorizations because she believed she would be terminated immediately if she refused to sign the authorizations or contested responsibility for the shortages. When asked why she held this belief, Meranian testified that it was not based upon anything she was told by anyone at the Orleans, she just assumed that she would be fired if she did not sign the slips.

The hearing officer concluded that the pre-loss or blanket authorization was not a knowing and intelligent waiver of

---

[14]*See A Minor v. Clark Co. Juvenile Ct. Servs.*, 87 Nev. 544, 548, 490 P.2d 1248, 1250 (1971) (title of a statute may be considered in determining legislative intent).

Meranian's right to receive full pay. We agree. The language in the pre-employment form describing the conditions of hire and agreement to the cash shortage reimbursement policy cannot authorize deductions for cash shortages that may or may not occur in the future.

However, the hearing officer further concluded that Meranian signed the shortage slips involuntarily and that the shortage slips were not a valid written authorization pursuant to NRS 608.110 because Meranian subjectively believed that she could not contest responsibility for the shortages and would be terminated for refusing to sign the shortage slips.

Employees in Nevada are presumed to be employed "at-will."[15] The at-will rule gives the employer the right to discharge an employee for any reason, subject to limited public policy exceptions.[16] Requiring an employee to reimburse an employer for cash shortages attributable to the employee does not contravene any public policy. As noted by the New Jersey Court of Appeals, the "policy of holding [employees] liable for their shortages does not contravene public policy or established law" because "[s]hortages are almost invariably due to the negligence or dishonesty of the employee, [and] [i]t is a fundamental rule in the law of agency that an . . . employee is generally liable to . . . [the] employer for loss sustained by the [employer] due to the [employee's] negligence or [misappropriation]."[17] Thus an employer can require an at-will employee to reimburse the employer for losses caused by the employee and terminate an employee who refuses to agree to the reimbursement.

NRS 608.110 contemplates a written authorization that is voluntary, and where specific facts of a particular case indicate that an employee did not voluntarily sign a shortage slip authorizing the wage deduction, such withholding would not be permissible under the statute. However, the mere fact that an employer has a policy that requires employees to repay cash shortages for which they are responsible and may terminate an employee for failing to comply with that policy does not render a written authorization invalid. Accordingly, we conclude that the hearing officer mis-

---

[15]*Dillard Department Stores v. Beckwith,* 115 Nev. 372, 376, 989 P.2d 882, 884-85 (1999) (citation omitted).

[16]*Id.* (citations omitted).

[17]*Male v. Acme Markets, Inc.,* 264 A.2d 245, 246 (N.J. Super. Ct. App. Div. 1970) (citations omitted).

construed the statute and erred in finding that the shortage slips signed by Meranian were invalid based on Meranian's subjective beliefs concerning termination.

Finally, the hearing officer determined that Meranian's written authorization was invalid because Orleans presented insufficient evidence demonstrating Meranian was responsible for the shortages. By inference, the hearing officer found that Orleans was essentially requiring Meranian to insure it against losses. While we agree that employees cannot be required to insure employers against losses, we conclude that the hearing officer's determination that Orleans presented insufficient evidence of Meranian's responsibility for the cash shortages was erroneous.

Here, the Orleans' representative indicated that an employee can dispute responsibility for a cash shortage and that an investigation, which may include disciplinary action, occurs following all shortages. Meranian indicated that she was placed in charge of a cash drawer containing $50,000.00 at the beginning of each shift. Further, Orleans' policy required cage cashiers to count the money in their drawers at the beginning of each shift and to lock their drawer whenever they were away from it. Meranian alleged that her supervisors did not always follow casino policy for handling cash drawers and she could not recall details from the days in question. Additionally, although Meranian did state that the $20.00 shortage had not occurred on her shift, she did not challenge her supervisor's determination that she was responsible for the shortage and she signed the shortage slip. Finally, Meranian could not account for the $500.00 shortage, and she acknowledged that it occurred during her shift. Thus, the record reveals that Orleans had a reasonable basis for determining that Meranian was responsible for the cash shortages and that its determination that she was responsible for the cash shortages was not arbitrary. Accordingly, we conclude that the hearing officer used an erroneous standard in determining the validity of Meranian's written authorization. Although the hearing officer may disagree with an employer's determination regarding responsibility for a shortage, so long as an employer has a reasonable basis for attributing a loss to that employee, the employer may require the employee to reimburse the employer or face disciplinary action.

## CONCLUSION

We conclude that the plain language of the phrase "other deductions authorized by written order of an employee" in NRS 608.110(1) permits an employer to withhold amounts equivalent to cash shortages from an employee's wages if the employee vol-

untarily authorizes the withholding in writing. Nothing in the record suggests that Meranian was improperly coerced into signing the withholding authorizations. Further, we conclude that the hearing officer therefore improperly imposed a statutory penalty against Orleans pursuant to NRS 608.040(1). Accordingly, we reverse the order of the district court upholding the hearing officer's decision that Meranian was entitled to $520.00 as wages and we affirm the order of the district court setting aside the imposition of a penalty against Orleans.

MAUPIN, C. J., concurring:

I agree with the majority that NRS 608.110(1) permits employers in this state to make deductions from wages paid to employees per prior written authorization signed by the employee. Thus, as noted by the majority, the legal conclusions of the hearing officer were in error.

I would add to the majority analysis by stating my view that Ms. Meranian's agreement to the withdrawals, standing on its own, cannot as a matter of law give rise to an inference of coercion. Our conclusion that such agreements are legal absent some collateral evidence of coercion is simply at odds with the notion that the nature of these arrangements is inherently coercive.