Hardesty, J.,
concurring in part and dissenting in part:
The majority concludes that the single-subject requirement embodied in NRS 295.009 does not violate the Nevada or federal constitutions, and that, by its plain language, the requirement limits initiative and referendum provisions to those that are “functionally related and germane” to the petition’s general subject. The majority further concludes that the initiative at issue in this case, the Nevada Property Owners’ Bill of Rights, impermissibly contains provisions functionally related and germane to more than one subject. With these conclusions, I concur. But with regard to the majority’s view that, as a consequence of the single-subject requirement violation, this court can and should sever and strike certain provisions from this initiative, I dissent.
As the majority recognizes, the single-subject requirement has been implemented in several states and was essentially designed to help facilitate the people’s legislative process by promoting informed decisions and preventing the confusion, and in some cases, deception, that results when certain less-popular provisions are “log-rolled” into a petition proposing an idea that the public generally favors.[1] By limiting initiative and referendum petitions to one subject, the requirement allows petition signers and voters to separately consider each different proposal, and the potential effects of that proposal, before deciding whether to sign the petition or vote for or against the proposal.
Further, the requirement prevents “log-rolling,” which occurs when two or more completely separate provisions are combined in a petition, one or both of which would not obtain enough votes to pass without the other. Generally, to “log-roll” a provision into enactment, the proponent advances a proposition that the proponent expects would pass constitutional muster and be easily enacted by the voters, but then adds to the petition a provision, often “hidden” deep within, that is less popular. For instance, a group might *923 attempt to appeal to a majority of Nevadans by proposing, by way of initiative petition, to adopt more stringent registration requirements for sexual offenders, regardless of the offenders’ notification levels. But then, the group might also place somewhere in their petition a provision abolishing the death penalty. While the group might reasonably expect that the public wants to enact the more stringent registration requirements, it is less reasonable to expect that the same voters favor abolishing the death penalty. And even if they were aware of both provisions, the people would face a “Hobson’s choice”;[2] they could either accomplish the goal of further protecting the public from sex offenders while simultaneously abolishing a law that they generally favor, or forgo the opportunity of increased sex offender protections in favor of preserving the death penalty. The single-subject requirement, then, is useful in focusing the petition signers’ and voters’ attention on the one subject to be advanced, without creating confusion over what that subject is, and without making them choose between competing policy goals.
In this case, as the majority concludes, the initiative petition im-permissibly violates the single-subject requirement because it contains more than one subject. Indeed, despite their assertions that the initiative petition had as its impetus the U.S. Supreme Court’s ruling in Kelo v. New London,[3] the proponents of the initiative petition acknowledged during oral argument and stated in their briefs that their petition intentionally addresses multiple subjects beyond the Kelo ruling. Moreover, in their briefs, the initiative’s proponents were unable to agree to a single unified statement as to the initiative’s general subject, in one instance arguing in favor of the paired subjects “eminent domain/government takings.”
As the majority suggests, the initiative contains at least three separate subjects: fundamental property rights in Nevada; eminent domain actions; and governmental liability for a new and as of yet undefined claim known as “governmental action” (the legal elements of which appear to be defined only by whether the plaintiff has sustained “substantial economic loss,” a term which is also undefined and left solely to future judicial discretion). Accordingly, I agree with the majority that this petition pertains to at least three different subjects, if not more, and as a result, violates NRS 295.009.
I disagree, however, that there exists any basis or legal authority for the device fashioned by the majority to remedy this viola *924 tion — the discretionary severance and striking of certain provisions, so that any purportedly non-offensive provisions may remain on the ballot. As this court has previously recognized, the initiative process is a precious power “reserved to the people” of this state.[4] Courts should therefore always be circumspect in reviewing initiative petitions in response to preelection challenges, giving deference to their placement on the ballot. That does not mean, however, that we may ignore admitted violations of the rules that plainly establish how the people of this state may amend their constitution and change their laws. In fashioning a “sever and strike” remedy for an admitted violation of the single-subject requirement, the majority has ignored the violation itself.
Respectfully, based on general principles of statutory construction, prior Nevada decisional law, and important public policy reasons, I disagree that the majority may do so. First and foremost, NRS 295.009 does not allow for the severance and striking of purportedly offensive provisions. That statute is entitled, “Requirements for petition.”[5] In setting forth those requirements, the statute provides that “[ejach petition for an initiative . . . must . . . [e]mbrace[ ] but one subject.” (Emphasis added.) Accordingly, a petition that does not meet this threshold requirement is defective and by definition necessarily fails.[6] This court has repeatedly advocated adherence to the basic principle of statutory construction prohibiting a court from going beyond the terms of a plain and unambiguous statute,[7] yet the majority now completely disregards this well-established principle in its entirety by engrafting a severability provision onto NRS 295.009. This it cannot do; the initiative is defective in whole, and as such, it must be wholly stricken from the ballot.[8]
*925 Second, the majority’s sever and strike determination has been undertaken without any separate authority and in express violation of this court’s opinion in Rogers v. Heller,[9] which held that “initiative legislation is not subject to judicial tampering — the substance of an initiative petition should reflect the unadulterated will of the people and should proceed, if at all, as originally proposed and signed.” In that case, concerning an initiative petition designed to increase funding to Nevada public schools, we declined to sever a provision that lacked sufficient funding for the appropriation it made, in violation of a threshold constitutional requirement for initiative petitions.[10] In declining to interfere with the components of a petition that had been “signed by thousands of voters,” we recognized that if we failed to keep the initiative petition “substantively intact[,] ... the people’s voice would be obstructed.”[11] Pointing out that we had no way of knowing “whether an initiative’s drafters and signers would want an initiative to proceed without a primary component of the proposal,” we concluded that the initiative must as a result be declared void for failing to meet the threshold requirement.[12] As this initiative also violates a threshold requirement for initiative petitions — a requirement recognized by the majority as valid under the Nevada Constitution— the same standard should apply.
Further, the majority is proceeding without the development of any record that would form the basis for severing and striking certain provisions while leaving others on the ballot. As there is consequently no way of discerning whether subsections 1 and 8 are not “key” components of the initiative, the people’s voice is no less obstructed here by the majority’s determination that the initiative should be severed for those subsections’ purported offense to NRS 295.009 than if the petition had failed to meet a threshold requirement under the Nevada Constitution.[13]
In fact, on the few occasions when courts of other jurisdictions have severed petitions for violations of the single-subject require *926 ment, they have generally done so only after determining that the stricken provision was unconstitutional.[14] And even courts that have severed initiatives have generally refused to do so pre-election.[15] In this case, the majority has made no determination that subsections 1 and 8 violate the Constitution, and indeed, nothing is inherently fundamentally unconstitutional with those subsections. Yet the majority strikes them from the petition.
This court historically has concluded, in the legislative context, that when it is not possible to determine from an act and the title thereof which portion of the act is valid and which is not, single-subject requirement violations by the Legislature render the entire legislative act void.[16] Instead of treating NRS 295.009 single-subject requirement violations the same, the majority concludes that the legislative history of that statute supports its theory of sev-erability. But that is not the case, and in so concluding, the majority mistakenly takes the Legislature’s pre-enactment modifica *927 tion of a draft statute as indicating its intent where no such intent can be found.[17] It does not follow that, by considering and omitting severability language, the Legislature intended to make available such a remedy; it is just as, if not more, reasonable to interpret the deletion as legislative recognition that a different remedy would more appropriately apply. It is logical to conclude that the Legislature believed that the same remedy that applies to its violation of the single-subject requirement — voiding the legislation — likewise would be applied to initiatives that pertain to more than one subject-complete nullification. As explained above, however, the plain language of NRS 295.009 designates the boundaries of a court’s statutory interpretation powers, and that language does not include a severability provision.
Although as additional authority for striking certain provisions, the majority points to the initiative’s subsection 14, which contemplates the proposed section’s severability in the event a provision is stricken, that subsection certainly does not give the court license to strike provisions that do not have a separate legal basis for their removal, such as unconstitutionality or unenforceability.[18] This court recognized this basic concept in Rogers, appreciating that “[sjeverability is a judicial doctrine recognizing the obligation of the judiciary to uphold the constitutionality of legislative enactments where it is possible to strike only the unconstitutional pro *928 visions’’[19] Accordingly, despite the severability provision’s broad terms, it is misused by the majority in this case to improperly sever and strike certain provisions that have not been determined constitutionally infirm.
Finally, to preserve unadulterated the will of the people, the proper remedy for the single-subject requirement violation here is to strike from the ballot the entire initiative. The same sanctity with which this court reviews initiative petitions should be given to the severance of their terms.[20] The majority has no cause for tampering with the language of an initiative petition signed by more than 130,000 of the electorate. Some of those signers may have endorsed the eminent domain portion, but others may have endorsed the change in fundamental rights portion, while others the new government action portion, and yet others all of the concepts the petition embodies. Because this court lacks a factual or legal basis for severing and striking certain provisions over others, we should decline this remedy and invalidate the defective petition in its entirety.[21]
The majority, by creating this remedy of severing and striking portions of an initiative, has set a dangerous precedent for the future review of initiative petitions. Nevada courts are now empowered to sever and strike provisions that violate the single-subject requirement, not because those provisions are unconstitutional or unenforceable, but simply because the court determines that the offending provisions fall outside the court’s conjecture of what single subject the petition is attempting to promote. But the majority fashions no analysis to employ in determining which of *929 the provisions, signed by the people of this state, should stay, and which should be stricken. Such discretion, which, as well stated by a California court of appeal, allows the courts to employ pure “judicial surgery” in severing a petition,[22] creates an unworkable test for future cases and gives the courts unfettered freedom to tamper with the people’s constitutional prerogative.[23]
Instead, courts should respect what the citizens of this state have signed by refusing to manipulate or tinker with it. While striking a petition that violates the single-subject requirement in its entirety perhaps seems severe, perverting the signers’ will through discretionary , judicial modification is no less drastic a remedy. Moreover, striking the petition in whole is less harsh a remedy than it at first glance seems. While it is recognized that drafting and circulating an initiative petition for signatures consumes considerable time and financial resources, a stricken initiative’s proponents nonetheless are not without solution; they may cure the defects in their petition and prepare it for the next election. In all events, future initiative and referendum petition proponents must exercise great care to avoid single-subject requirement violations. As it now stands, however, future proponents must exercise even greater care in avoiding single-subject requirement violations, lest their will be subverted through the severance and striking of certain provisions by unfettered judicial discretion.

 See Hearing on S.B. 224 Before the Senate Legislative Operations and Elect. Comm., 73d Leg. (Nev., April 12, 2005) (indicating that the purpose of Nevada’s single-subject law is to prevent petition signer and voter confusion, especially regarding potentially “hidden” subjects in a petition); Campbell v. Buckley, 203 F.3d 738, 746 (10th Cir.2000) (recognizing that the single-subject rule advances the dual purposes of preventing voter confusion and promoting informed decisions); Senate of the State of Cal. v. Jones, 988 P.2d 1089, 1105-06 (Cal. 1999) (noting that the “basic objectives” behind California’s single-subject rule are to avoid voter confusion and obscuring or manipulating the electorate’s intent).

 A “Hobson’s choice” is “an apparently free choice when there is no real alternative.” Merriam Webster’s Collegiate Dictionary 551 (10th ed. 1997).

 545 U.S. 469 (2005).

 Garvin v. Dist. Ct., 118 Nev. 749, 751, 59 P.3d 1180, 1181 (2002); see Nev. Const, art. 19, § 2(1).

 See Coast Hotels v. State, Labor Comm’n, 117 Nev. 835, 841-42, 34 P.3d 546, 551 (2001) (“The title of a statute may be considered in determining legislative intent.”).

 See generally Merriam Webster’s Collegiate Dictionary 995 (10th ed. 1997) (defining “requirement” as both “something required: . . . NECESSITY” and “something essential to the existence or occurrence of something else: CONDITION”).

 Coast Hotels, 117 Nev. at 840, 34 P.3d at 550; Nevada Power Co. v. Haggerty, 115 Nev. 353, 366, 989 P.2d 870, 878 (1999); City Council of Reno v. Reno Newspapers, 105 Nev. 886, 891, 784 P.2d 974, 977 (1989).

 See, e.g., Taxpayer Protection v. Unfair Tax Schemes, 16 P.3d 207, 209 (Ariz. 2001) (invalidating an initiative petition under the state constitution’s one-subject rule and declining to sever the petition into three separate petitions because the constitution gave the court “no authority to adopt such an extraordinary measure,” when no single provision separately met the threshold constitutional requirements for initiative petitions).

 117 Nev. 169, 178, 18 P.3d 1034, 1040-41 (2001).

 Id. at 172-77, 18 P.3d at 1035-38.

 Id. at 177, 18 P.3d at 1039.

 Id. at 178, 18 P.3d at 1040.

 Rogers, 117 Nev. at 177, 18 P.3d at 1039; see also Bennett v. Drullard, 149 P. 368, 370 (Cal. Ct. App. 1915) (refusing, for “both moral and legal reasons,” including express charter language, to allow for the severance of a petition, because the court would then be “doing an unfair and unjust act” in “directing something to be placed on the ballot which the hundreds of voters did not petition for at all”); Hazelwood Yellow Ribbon Committee v. Klos, 35 S.W.3d 457, 470-71 (Mo. Ct. App. 2000) (disallowing severance because the court could not ascertain the petition drafters’ and signers’ intent and motivation).

 See Cal. Trial Lawyers Ass’n v. March Fong Eu, 245 Cal. Rptr. 916, 922 (Ct. App. 1988) (noting that severance has been permitted in a few cases and only when the stricken provisions were found unconstitutional), abrogated on other grounds by Lewis v. Superior Court, 82 Cal. Rptr. 2d 85 (1999); Advisory Opinion to Attorney General, 703 So. 2d 446, (Fla. 1997) (striking ballot petition that violated Florida’s single-subject rule); Ray v. Mortham, 742 So. 2d 1276 (Fla. 1999) (severing unconstitutional provision of initiative, even though initiative met single-subject requirements), holding modified on other grounds by Cook v. City of Jacksonville, 823 So. 2d 86 (Fla. 2003); La. Associated Gen. Contractors v. State, 669 So. 2d 1185, 1201 (La. 1996) (discussing the severability doctrine in the context of a law’s constitutionality); see also Rogers, 117 Nev at 177, 18 P.3d at 1039 (recognizing that “[sjeverability is a judicial doctrine recognizing the obligation of the judiciary to uphold the constitutionality of legislative enactments where it is possible to strike only the unconstitutional portions” (citing Ray, 742 So. 2d at 1280)).

 See, e.g., Citizens for Resp. Behavior v. Superior Court, 2 Cal. Rptr. 2d 648, 661 (Ct. App. 1991) (rejecting the suggestion that an initiative’s sever-ability provision saves at least some parts of the proposal, because, “[wjhile severance of offending portions of a statute is often a permissible approach if the law has been enacted, the policy must be different when a court is faced with a proposed law,” since preelection severance could work “a deception on the voters”); Ray, 742 So. 2d at 1281-82, 1282 (distinguishing between invalidating, preelection, petitions for single-subject requirement violations and severing provisions from petitions, post-enactment, in the wake of a determination of infirmity, noting that “[t]he issue of severability arises only after an amendment already approved by the voters has been challenged”); see also In re Initiative Pet. No. 362, 899 P.2d 1145, 1152-53 (Okla. 1995) (“Where an initiative expressly provides for severability we will not declare one of its sections unconstitutional at the pre-election stage.” (internal quotations omitted)); accord Wyoming Abort. Rights League v. Karpan, 881 P.2d 281, 289 (Wyo. 1994).

 See Nev. Const. art. 4, § 17; State v. Hallock, 19 Nev. 384, 390, 12 P. 832, 835 (1887).

 See generally Mineral County v. State, Bd. Equalization, 121 Nev. 533, 539, 119 P.3d 706, 710 (2005) (Hardesty, J., dissenting) (recognizing that “[w]hen the Legislature is silent, this court should not fill in alleged legislative omissions based on conjecture as to what the [L]egislature would or should have done. . . . The Legislature’s silence on [a] right . . . cannot be viewed as an expression of its intention to grant such a right.” (internal quotations omitted)); Providence Washington Ins. Co. v. Grant, 693 P.2d 872, 878 (Alaska 1985) (declining “to attribute significance to the legislature’s mere inaction,” since “ ‘[t]o explain the cause of nonaction by Congress when Congress itself sheds no light is to venture into speculative unrealities’ ” (quoting Helvering v. Hallock, 309 U.S. 106, 119-20 (1940))); Department of Social Serv. v. Saunders, 724 A.2d 1093, 1103 (Conn. 1999) (“It is a basic tenet of statutory construction that [courts] rely on the intent of the legislature as that intent has been expressed.” (internal quotation omitted)).

 See, e.g., Santa Barbara School District v. Superior Court, 530 P.2d 605, 649-50 (Cal. 1975) (indicating that a severability provision, which allows sev-erability but “does not conclusively dictate it,” may be used only to sever invalid provisions from those that are valid, if the portion that remains is complete and would likely have been enacted by the legislative body regardless); Fine v. Firestone, 448 So. 2d 984, 992 (Fla. 1984) (determining that a sever-ability clause did not operate to save a petition that violated a constitutional one-subject rule, because the clause was not part of the language appearing on the ballot and because it could not be used to “circumvent [the Florida] Court’s responsibility to determine whether the proposed amendment may constitutionally be placed before the voters”).

 Rogers, 117 Nev. at 177, 18 P.3d at 1039 (emphasis added) (citing Ray, 742 So. 2d at 1280).

 Because they represent the direct legislative voice of the people, see Garvin, 118 Nev. at 753, 59 P.3d at 1183, initiative petitions should be reviewed by courts with great prudence. As a result, and as the majority notes, this court has recently declared that it generally will not consider non-threshold challenges to initiative petitions’ substance. Herbst Gaming, Inc. v. Sec’y of State, 122 Nev. 877, 141 P.3d 1224 (2006). Nevertheless, here, by severing proposed legislation without a factual or legal basis, or a determination of invalidity, the majority encroaches upon the protections afforded the people of this state under the separation of powers doctrine, which requires that the judicial, legislative, and executive functions remain separate. Nev. Const, art. 3, § 1; cf. McAlpine v. University of Alaska, 762 P.2d 81, 94-95 (Alaska 1988) (concluding that an initiative petition may be severed when in violation of the single-subject rule, if the remainder of the proposed legislation can be given legal effect and represents the measure’s “spirit,” and the measure’s proponents’ wishes appear to be reflected in the severance).

 As I would strike the entire initiative because it violates NRS 295.009’s single-subject requirement, I do not address the sever and strike issue in light of the administrative/legislative distinction. Nevertheless, I note my agreement with the majority’s discussion of this issue.

 March Fong Eu, 245 Cal. Rptr. at 922.

 See Bennett, 149 P. at 370 (recognizing that the idea of severance is inconsistent with “the whole theory of direct legislation, . . . that the people have a right to propose their own laws, and to vote upon them as proposed, without having the same altered in any manner whatsoever by any person or persons whomsoever” (internal quotations omitted)).