By the Court, HARDESTY, J.:
In these consolidated appeals, we consider whether an attorney can be held liable for a claim under NRS 116.31183 as an agent of a common-interest community homeowners' association. We also consider whether attorneys litigating pro se and/or on behalf of their law firms can recover attorney fees and costs.
We conclude that an attorney is not an "agent" under NRS 116.31183 for claims of retaliatory action where the attorney is providing legal services for a common-interest community homeowners' association. We further conclude that attorneys litigating pro se and/or on behalf of their law firms cannot recover fees because those fees were not actually incurred by the attorney or the law firm. However, we conclude that attorneys litigating pro se and/or on behalf of their law firms can recover taxable costs in the action.
*58 Accordingly, we affirm in part and reverse in part.
FACTS AND PROCEDURAL HISTORY
Appellants David and Rochelle Dezzani own a condominium in Incline Village, Nevada. Like all unit owners, the Dezzanis are members of the McCloud Condominium Homeowners' Association (HOA), which is governed by a board of directors and subject to the Revised Declaration of Limitations, Covenants, Conditions, and Restrictions of McCloud Condominium Homeowners' Association (CC&Rs). Respondents Gayle Kern, a Nevada attorney, and her law firm, Kern & Associates (collectively, Kern), represent the HOA and provide legal advice to its governing board.
In 2013, a dispute arose between the Dezzanis and the HOA regarding an extended deck on the Dezzanis' unit: The previous unit owner installed the deck extension with board approval in 2002. The board issued the Dezzanis a notice of violation (NOV) with drafting assistance from Kern informing the Dezzanis that the deck encroached into the common area and thus violated the CC&Rs. The NOV indicated that the Dezzanis had two choices: (1) submit an architectural application to the board to revert the deck back to its original size; or (2) execute a covenant for the deck extension, which would allow it to remain for the Dezzanis' ownership and one subsequent conveyance.
After the Dezzanis responded to the NOV, Kern sent the Dezzanis a letter stating that she represented the HOA and restating the board's position on the deck extension. Kern and the Dezzanis exchanged several letters wherein Kern communicated the board's position regarding the deck and the Dezzanis challenged the NOV and criticized Kern's legal advice, understanding of Nevada law, and competency. The board held a hearing and ultimately upheld the NOV. Throughout this time, Kern advised the HOA regarding the Dezzanis' and other members' deck extensions.
The Dezzanis filed a complaint against Kern and board member Karen Higgins.[1] The complaint alleged retaliation based on NRS 116.31183. This statute allows a unit owner to "bring a separate action" for compensatory damages, attorney fees, and costs. NRS 116.31183(2)(a), (b). Such an action is permissible when "[a]n executive board, a member of an executive board, a community manager or an officer, employee or agent of an association" takes
retaliatory action against a unit's owner because the unit's owner has:
(a) Complained in good faith about any alleged violation of [NRS Chapter 116] or the governing documents of the association;
(b) Recommended the selection or replacement of an attorney, community manager or vendor; or
(c) Requested in good faith to review the books, records or other papers of the association.
NRS 116.31183(1). The Dezzanis alleged that Kern retaliated against them because they requested that the HOA retain a new attorney; however, the Dezzanis did not specify how Kern retaliated against them other than furnishing advice to the HOA and communicating with the Dezzanis on behalf of the HOA.
The district court granted Kern's NRCP 12(b)(5) motion to dismiss with prejudice after finding that NRS 116.31183 does not permit attorneys to be held personally liable for action taken on behalf of a client, and that "to permit such causes of action against Kern would result in a chilling effect on individuals' ability to hire and retain counsel."[2] The district court awarded fees and costs to Kern pursuant to NRS 18.010(2)(b) and NRCP 11, finding that the Dezzanis' claims were intended to harass Kern because Kern informed the Dezzanis that their claims were meritless. The Dezzanis appealed both orders.
*59 The Dezzanis' appeals were consolidated and assigned to the Court of Appeals, where that court affirmed the order dismissing the complaint and reversed the attorney fees and costs award because the Dezzanis failed to submit their claim to mediation under NRS 38.310(1).[3] See Dezzani v . Kern & Assocs., Docket Nos. 69410 & 69896 (Order Affirming in Part and Reversing in Part, Nev. Ct. App., Nov. 16, 2016). Kern filed a petition for review with this court, which we granted.
DISCUSSION
NRS 116.31183 permits "a separate action" when an "agent" of a homeowners' association takes certain retaliatory action against a unit's owner. The issue here is whether the term "agent" in the statute includes an attorney who is providing legal services to and acting on behalf of a homeowners' association.
The district court did not err in dismissing the Dezzanis' complaint
We review an order granting an NRCP 12(b)(5) motion to dismiss de novo. Buzz Stew , LLC v. City of N . Las Vegas, 124 Nev. 224, 227-28, 181 P.3d 670, 672 (2008). Issues of statutory construction are reviewed de novo. Pub. Emps.' Benefits Program v. Las Vegas Metro. Police Dep't , 124 Nev. 138, 146, 179 P.3d 542, 548 (2008). "The leading rule of statutory construction is to ascertain the intent of the legislature in enacting the statute." McKay v. Bd. of Supervisors of Carson City, 102 Nev. 644, 650, 730 P.2d 438, 443 (1986). To determine legislative intent, we first consider and give effect to the statute's plain meaning because that is the best indicator of the Legislature's intent. Pub . Emps.' Benefits Program, 124 Nev. at 147, 179 P.3d at 548. "[I]t is the duty of this court, when possible, to interpret provisions within a common statutory scheme harmoniously with one another in accordance with the general purpose of those statutes and to avoid unreasonable or absurd results, thereby giving effect to the Legislature's intent." Torrealba v. Kesmetis, 124 Nev. 95, 101, 178 P.3d 716, 721 (2008) (internal quotation marks omitted).
The word "agent" is not defined in NRS 116.31183 or otherwise in NRS Chapter 116. See NRS 116.31183 ; NRS 116.003 -.095 (definitions). Kern points to NRS 116.31164, which governs foreclosure of liens, and argues that because NRS 116.31164 uses the words "agent" and "attorney" distinctly, it demonstrates that the Legislature purposefully distinguished an attorney from an agent under NRS Chapter 116. Therefore, Kern contends that the Legislature specifically omitted attorneys from NRS 116.31183, and the term "agent" does not include attorneys.
We agree. NRS 116.31164(4) states that a foreclosure sale can be "conducted by the association, its agent or attorney." (Emphasis added.) This distinction demonstrates that the Legislature used the term "attorney" when it intended to address situations applying to attorneys and the term "agent" when it intended to generically address the duties owed by agents. See Coast Hotels & Casinos, Inc . v. Nev . State Labor Comm'n, 117 Nev. 835, 841, 34 P.3d 546, 550 (2001) ("Generally, when the [L]egislature has employed a term or phrase in one place and excluded it in another, it should not be implied where excluded."); Allstate Ins. Co. v. Fackett, 125 Nev. 132, 138, 206 P.3d 572, 576 (2009) ( "We read statutes within a statutory scheme harmoniously with one another to avoid an unreasonable or absurd result."); McGrath v. State Dep't of Pub. Safety, 123 Nev. 120, 123, 159 P.3d 239, 241 (2007) (concluding that "we presume that the Legislature intended to use words in their usual and natural meaning"); see also Food & Drug Admin, v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000) (concluding that courts must interpret statutes "as a symmetrical and coherent regulatory *60 scheme" (internal quotation marks omitted) ); Davis v. Mich. Dep't of Treasury, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). Accordingly, given the Legislature's distinction between "agent" and "attorney," we conclude that the Legislature did not intend for attorneys to be included in the term "agent" for the purposes of NRS 116.31183.
The dissent is dismissive of the fact that the Legislature distinguished between the terms "agent" and "attorney" in another statute within the same statutory scheme as NRS 116.31183. Notably, the Dezzanis did not raise the statutory interpretation arguments that the dissent puts forth, and therefore, we should not consider them sua sponte. See, e.g., Old Aztec Mine, Inc. v. Brown, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981). Additionally, because the Dezzanis failed to respond to Kern's arguments regarding the Legislature's distinction between "agent" and "attorney," they have waived the issue. Bates v. Chronister, 100 Nev. 675, 682, 691 P.2d 865, 870 (1984) (treating the failure to respond to the opposing party's arguments as a confession of error).
Regardless, the dissent's statutory analysis ignores fundamental rules of statutory construction that begin with analyzing a statute's plain language and its context in the statutory framework, and instead, emphasizes rules of statutory construction involving grammar and punctuation use that are generally resorted to only when they can be employed consistently with the legislative intent. See 1A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutes & Statutory Construction § 21.15 (7th ed. 2009) (stating that grammar and punctuation use are statutory interpretation aids, but "neither is controlling unless the result is in harmony with the clearly expressed intent of the Legislature," and acknowledging that "[c]ourts have indicated that punctuation will not be given much consideration in interpretation because it often represents the stylistic preferences of the printer or proofreader instead of the considered judgment of the drafter or legislator" (emphasis added) ).
Additionally, the dissent suggests that we read the word "or" too strictly. But "[t]he word 'or' is typically used to connect phrases or clauses representing alternatives." Coast Hotels & Casinos , Inc., 117 Nev. at 841, 34 P.3d at 550. Moreover, "courts presume that 'or' is used in a statute disjunctively unless there is clear legislative intent to the contrary." 1A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutes & Statutory Construction § 21.14 (7th ed. 2009) (emphasis added). The dissent concludes that the lack of a comma separating the words "agent" and "attorney" in NRS 116.31164(4) is sufficient to demonstrate that the Legislature intended the phrase "agent or attorney" to mean that "an attorney is merely a subset or an example of an agent, as opposed to not-an-agent." Dissenting opinion post, at 66. However, there is no indication that the Legislature intended to use the word "or" in any manner other than disjunctively, and we will not give the absence of a comma decisive weight where doing so would render the word "attorney" in NRS 116.31164(4) redundant and meaningless. See Bd. of Cty. Comm'rs of Clark Cty. v. CMC of Nev., Inc., 99 Nev. 739, 744, 670 P.2d 102,105 (1983) (concluding that we avoid "[a] reading of legislation which would render any part thereof redundant or meaningless, where that part may be given a separate substantive interpretation"); see also 1A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutes & Statutory Construction § 21.14 (7th ed. 2009) (noting that "when a list exists, the 'or' between two subsections makes it necessary to read 'or' as a disjunctive").
Under the dissent's reasoning, the Legislature's use of the word "agent" in NRS Chapter 116 should always include attorneys. But this interpretation is contrary to the plain language of NRS Chapter 116 and overlooks the Legislature's distinct use of the term "agent" when intending to address matters concerning agents and not attorneys. See, e.g., NRS 116.3107(1) (requiring unit owners to allow "agents" to pass through their units in order for the association to uphold its duty to maintain the common elements);
*61 NRS 116.31073(3)(a) (allowing "[t]he association, the members of its executive board and its officers, employees, agents and community manager" to enter a unit to repair a security wall). Thus, such a broad interpretation of the word "agent" does not comport with the statutory framework as a whole. Accordingly, we conclude that the Legislature did not intend to include attorneys in the term "agent" for purposes of NRS 116.31183. Public policy does not support including attorneys as agents under NRS 116.31183.
Notwithstanding the statutory language and interpretation, the Dezzanis ask us to conclude as a matter of public policy that attorneys are included in the term "agent" in NRS 116.31183. Based on the unique characteristics of an attorney-client relationship that distinguish it from a general agent-principal relationship, we decline to do so.
Black's Law Dictionary defines "agent" as "[s]omeone who is authorized to act for or in place of another; a representative." Agent, Black's Law Dictionary (10th ed. 2014). Generally, "[a]n agency relationship results when one person possesses the contractual right to control another's manner of performing the duties for which he or she was hired." Hamm , 124 Nev. at 299, 183 P.3d at 902. Agency law typically creates liability for a principal for the conduct of his agent that is within the scope of the agent's authority. Nev. Nat'l Bank v. Gold Star Meat Co., 89 Nev. 427, 429, 514 P.2d 651, 653 (1973). Conversely, "[a]n agent's breach of a duty owed to the principal is not an independent basis for the agent's tort liability to a third party." Restatement (Third) of Agency § 7.02 (2006). But this definition of "agent" describes a general agent-principal relationship, which, as discussed below, is distinguishable from an attorney-client relationship. And the legislative history of the statute, which was passed into law in 2003, see 2003 Nev. Stat., ch. 385, § 41, at 2218, and its recent amendments, offer no insight into the intended meaning of the word.[4]
This court has recognized that the attorney-client relationship is an agent-principal relationship in the context of whether the client is responsible for the acts of the attorney. For example, in Estate of Adams v. Fallini, we considered whether the district court erred in granting an NRCP 60(b) motion to set aside the judgment based on fraud upon the court. 132 Nev. ----, ----, 386 P.3d 621, 625 (2016). In resolving the issue, we noted that the respondent's lawyer's "abandonment of his client and his professional obligations to his client ... alone ... might not warrant relief, as the lawyer is the client's agent and the acts and omissions of an agent ordinarily return to the principal who hired the faithless agent, not those who dealt with the agent in his representative capacity." Id. Similarly, in a case where the lawyer fraudulently entered into a settlement agreement on behalf of his clients without authority, we concluded that the clients were not bound to the agreement because the lawyer's fraud negated his authority as an agent. NC-DSH, Inc. v. Garner, 125 Nev. 647, 656-57, 218 P.3d 853, 860 (2009). Other courts that have concluded that the attorney-client relationship is an agent-principal relationship have similarly focused on whether the client could be liable for the attorney's actions under agency law. See, e.g., Horwitz v. Holabird & Root, 212 Ill.2d 1, 287 Ill.Dec. 510, 816 N.E.2d 272, 277 (2004) ( "In the attorney-client relationship, clients are generally bound by their attorneys' acts or omissions during the course of the legal representation that fall within the apparent scope of their attorneys' authority."); Koutsogiannis v. BB & T, 365 S.C. 145, 616 S.E.2d 425, 428 (2005) (concluding that an attorney is an agent of the client, and, therefore, the client can be liable for the attorney's conduct that falls within the scope of representation); see also Grace M. Giesel, *62 Client Responsibility for Lawyer Conduct: Examining the Agency Nature of the Lawyer-Client Relationship , 86 Neb. L. Rev. 346, 348 (2007).
However, whether the attorney, as opposed to the client, can be personally liable as an agent for actions the attorney took in representing his or her client is distinguishable from cases involving client liability for attorney actions. It does not follow that because an agency relationship has been recognized in the context of client liability for attorney actions that the same notion applies in the context of attorney liability to an adverse or third party from actions taken in representing a client. Rather, an attorney providing legal services to a client generally owes no duty to adverse or third parties. Fox v . Pollack, 181 Cal.App.3d 954, 226 Cal.Rptr. 532, 536 (1986) ; Cantey Hanger, LLP v. Byrd , 467 S.W.3d 477, 481 (Tex. 2015). Whether an attorney is liable under an agency theory hinges on whether the attorney is acting solely as an agent for the client, i.e., as a debt collector, or whether the attorney is providing legal services to a client. Cantey Hanger, 467 S.W.3d at 481-83.
Moreover, we have previously noted that "the attorney-client relationship involves much more than mere agency, and is subject to established professional standards." Molezzo Reporters v. Patt, 94 Nev. 540, 542, 579 P.2d 1243, 1244 (1978). Additionally, we have recognized that courts treat the attorney-client relationship differently from other agent-principal relationships based on the unique characteristics of the attorney-client relationship and the different factual circumstances present in an attorney-client relationship. See NC-DSH, Inc., 125 Nev. at 656, 218 P.3d at 860 (observing that courts "do not treat the attorney-client relationship as they do other agent-principal relationships" in the context of settlement agreements (quoting Grace M. Giesel, Client Responsibility for Lawyer Conduct: Examining the Agency Nature of the Lawyer-Client Relationship , 86 Neb. L. Rev. 346, 348 (2007) ) ); see also Rucker v. Schmidt , 794 N.W.2d 114, 120 (Minn. 2011) ("[A]lthough attorneys in the discharge of their professional duties are, in a restricted sense, agents of their clients, this agency is distinguishable from other agency relationships...."). The attorney's role is to not only communicate on behalf of his client, but also to counsel, render candid advice, and advocate for his client. RPC 2.1 ; Greenberg Traurig, LLP v. Frias Holding Co ., 130 Nev. 627, 631-32, 331 P.3d 901, 904 (2014). Further, attorneys are limited by ethical obligations that are not typically present in other agent-principal relationships. See RPC 1.4(a)(5) (attorney assistance limited by Rules of Professional Conduct); accord RPC 1.1 (competence) ; RPC 1.6 (confidentiality).
Given an attorney's ethical obligations to be candid with a client and zealously represent his or her client, and the general presumption that an attorney providing legal services to a client is generally not subject to third-party liability for that representation, we agree with Kern and the amicus curiae State Bar of Nevada that the two relationships should not be treated the same in NRS 116.31183. Doing so, and imposing liability on an attorney for representing his or her HOA client, would impermissibly intrude on the attorney-client relationship and interfere with an HOA's ability to retain an attorney and the attorney's ability to ethically represent the HOA. Therefore, we conclude that the term "agent" in NRS 116.31183 does not include an attorney who is providing legal services to, and acting on behalf of, a common-interest community homeowners' association.
Although the Dezzanis argue that the attorney-client relationship is different when an attorney and an HOA are involved because the HOA members' fees are used to pay the HOA's attorneys, we disagree. Kern represented the HOA, not its individual members. Thus, similar to counsel for a corporation, Kern owed fiduciary duties only to the HOA, not to the individual members of the HOA. See Skarbrevik v. Cohen, England & Whitfield, 231 Cal.App.3d 692, 282 Cal.Rptr. 627, 635 (1991) ("[C]orporate counsel's direct duty is to the client corporation, not to the shareholders individually, even though the legal advice rendered to the corporation may affect the shareholders.").
Considering NRS Chapter 116 as a whole and giving harmonious effect to both NRS 116.31183 and NRS 116.31164, we conclude that the Legislature did not intend to use the *63 term "agent" to include attorneys. Additionally, given the unique characteristics of the attorney-client relationship that distinguish the attorney-client relationship from a general agent-principal relationship, we agree with Kern that the two relationships should not be treated the same in NRS 116.31183. Thus, because an attorney who is providing legal services and acting on behalf of a common-interest community homeowners' association is not an "agent" of the association for purposes of NRS 116.31183, there can be no cause of action against that attorney pursuant to NRS 116.31183 and the district court did not err when it dismissed the Dezzanis' action against Kern.
The district court erred in awarding Kern attorney fees
The Dezzanis also challenge the district court's award of attorney fees to Kern for the services she performed on behalf of herself and her firm. The Dezzanis assert that Kern cannot collect attorney fees because she was representing herself, whereas Kern argues that she is able to collect attorney fees because she was representing her law firm. The district court awarded attorney fees under NRS 18.010(2)(b) and as sanctions under NRCP 11, because it found that the Dezzanis initiated their suit to harass Kern. The district court noted that David Dezzani "has been an attorney for several years and is aware of the obligation to proceed in good faith in all causes of action," and that Kern notified the Dezzanis pursuant to NRCP 11(b) and (c) that their claim was meritless, but they decided to pursue it regardless.
We review a district court's award of attorney fees pursuant to NRS 18.010(2)(b) for an abuse of discretion. Semenza v. Caughlin Crafted Homes , 111 Nev. 1089, 1095, 901 P.2d 684, 687 (1995). We have consistently held that attorney litigants who proceed pro se may not be awarded attorney fees because when attorneys represent themselves or their law firms, no fees are actually incurred. See Frank Settelmeyer & Sons, Inc. v. Smith & Harmer, Ltd., 124 Nev. 1206, 1220-21, 197 P.3d 1051, 1060-61 (2008) (concluding that a law firm could not recover fees for itself when an attorney within the firm represented it); Sellers v . Fourth Judicial Dist. Court, 119 Nev. 256, 259, 71 P.3d 495, 497-98 (2003) (determining that a pro se attorney litigant is entitled to attorney fees only when he or she is genuinely obligated to pay an attorney for the services that the attorney performed). However, where pro se attorney litigants incur costs associated with the action, they can collect those costs. See Sellers, 119 Nev. at 258, 71 P.3d at 497.
The Dezzanis instituted suit against Kern and her law firm, and Kern's district court filings indicated that she proceeded pro se. Because Kern represented herself and her law firm, and thus did not actually incur any attorney fees, we conclude that the district court erred in awarding attorney fees to Kern. However, because Kern actually incurred costs defending this action, we conclude that the district court did not err in awarding Kern costs.[5]
CONCLUSION
Having concluded that the Legislature did not intend the word "agent" in NRS 116.31183 to encompass an attorney who is providing legal services to and acting on behalf of a common-interest community homeowners' association client, we conclude that the district court did not err in dismissing the Dezzanis' complaint for failure to state a claim upon which relief can be granted. We thus affirm the district court's judgment in Docket No. 69410. We further conclude that attorneys representing themselves or their law firms cannot recover attorney fees because those fees are not actually incurred. Therefore, we conclude that the district court abused its discretion in awarding *64 Kern attorney fees, and we reverse that portion of the district court's order, but affirm the portion of the district court's order awarding costs to Kern, in Docket No. 69896.
We concur:
Douglas, C.J.
Cherry, J.
Gibbons, J.
Parraguirre, J.
Stiglich, J.

Due to service of process issues, the claims against Higgins were dropped.

We note that although the district court cited NRS 116.3118 in its order, the surrounding discussion makes it clear that the court was actually referring to NRS 116.31183.

NRS 38.310(1) requires civil actions that relate to "[t]he interpretation, application or enforcement of any covenants, conditions or restrictions [ (CC&R's) ]" to be submitted to mediation prior to a civil action being filed in court. NRS 38.310(1) is not implicated in this case because the question before this court involves an interpretation of NRS 116.31183, not an interpretation of the HOA's CC&Rs. See Hamm v. Arrowcreek Homeowners' Ass'n, 124 Nev. 290, 296, 183 P.3d 895, 900 (2008) (concluding that NRS 38.310 applies where interpreting the CC&Rs is necessary to resolve the merits of the case).

See , e.g ., Hearing on S.B. 182 Before the Senate Judiciary Comm., Exhibit D8, 75th Leg. (Nev., March 18, 2009) (discussing NRS 116.31183's inclusion of community managers and stating that "they are probably already covered under 'agents' " but providing no further definition); Senate Daily Journal, 75th Leg. 449 (Nev., April 16, 2009) (stating that the purpose of the amendments to NRS 116.31183 was to "provide certain additional rights to units' owners by ... increasing the scope and definition of prohibited retaliatory action," without discussing the intended meaning of the word "agent").

Regardless of whether Kern actually incurred costs associated with the action, appellate review of this issue has been waived. See Sheehan & Sheehan v. Nelson Malley & Co., 121 Nev. 481,493, 117 P.3d 219, 227 (2005) (deeming waived the issue of whether costs awarded to a party were reasonably incurred where the opposing party did not move the district court to retax and settle the costs). Kern served the Dezzanis with a copy of her memorandum of costs, but the Dezzanis did not move the district court to retax and settle those costs. Therefore, the Dezzanis waived appellate review of this issue.